Carr, J.
Though several questions were raised and discussed, in the argument of this cause, there is but one which seems to me worthy of consideration by the court. That is a question wholly new, and very important. I sincerely wish, therefore, that it had been heard by a full court. It was said at the bar, that there is another case in court involving the same point: and, so far as I am concerned, I shall be perfectly willing, when that shall come before us, to hear the point again argued.
The question arises upon the 10th section of the statute concerning executions; a provision first introduced at tire revisal of 1819. As the law stood, up to that date, when a debtor charged in execution died, the party at whose suit he was so charged, might sue out new execution against his lands and goods : but such new execution could not be taken *273 against, any lands, tenements or hereditaments, which the person dying in execution, should, at any time after the judgment or judgments on which he was so charged, have sold bond fide for the payment of any of his creditors, at whose suit he should have been in execution, and the money paid, or secured to be paid, to any such creditors with thenprivity, in discharge of his or their debts, or some part thereof. These provisions of the former law were retained at the revisal, and form the 8th and 9th sections of the revised act. And then follows the new section.
In the case before us, Heiskell had a ca. sa. levied on Thompson: and while he was in execution upon it, the commonwealth obtained judgment against him, took out a fi. fa. and under it sold his tenement in Clarksburg to the defendant Jackson. Thompson afterwards stvore out. And the question arising under this new provision of the law, is, whether the lien of Heiskell’s ca. sa. do not overreach the sale of the commonwealth and the title of Jackson ?
If we take the literal meaning of the words, it would seem to decide the question at once : for they say that the ca. sa. shall bind the estate of the debtor, from the time of the levy; and here the levy was before the judgment of the commonwealth, and the ca. sa. in full force, when the sale took place. It was strongly contended, however, at the bar, that this would be giving the law a meaning much too large, and going far beyond the mischief intended to be cured. That mischief was said to be this, that a debtor in jail might give preference to some ca. sa. creditors over others; and the object of this clause was to take away such power, and give the ca. sa. creditors priority according to the levy of their executions. If a judge might be permitted the expression, I should say, I wish this were the true construction : for, it seems to me, that there is a harshness in the other, not in harmony with the general humanity of the law. It seems to hold out an invitation to creditors to take the bodies of their debtors. But such considerations can have no weight with the judge, where the -words of the lawr are *274 plain, and the meaning clear : and to me it seems that they are so here. The " ca. sa. shall bind the real estate from the time it shall be leviedbind the real estate, how ? not sub modo, but without exception. I can only understand it to mean, that from the moment the ca. sa. is levied, there is a lien which attaches to the real estate, and which, when the state of things happens that shall give it activity, will overreach every subsequent lien, incumbrance or sale. A creditor gets his judgment and levies his ca. sa. So long as the debtor chooses to remain in execution, the lien is dormant. When he swears out, it is wakened into life and activity, and vests in the sheriff a right to recover for the creditors (each in his turn) all land, to which the debtor had title on the date of the levy. But it looks not beyond the levy. If A. and B. have judgments, A’s being prior, and B. levies a ca. sa. and then A. taires an elegit, he can never be disturbed by the lien of B’s ca. sa. because his judgment was before it.
It was said this construction changes wholly the nature and effects of the ca. sa. And this is most true. But the legislature had the right to do this; and its words are so plain, that I am compelled to believe it meant to do it. If inconveniences are found to follow, the same hand which gave the wound, must administer the cure.
Green, J.
Of the various objections taken to this decree, only one requires serious examination; that which presents the question, Whether a ca. sa. executed, and the discharge of the debtor afterwards under the act for the relief of insolvent debtors, so binds the debtor’s lands, as to give the creditor a right to satisfaction out of diem, against a purchaser of the same lands, before the discharge of the debtor, under a writ of fieri facias upon a judgment of the commonwealth, obtained after the service of the ca. sa. ?
This depends upon the true construction of our act of 1819, declaring that all executions of ca. sa. shall bind the defendant’s real estate, from the time when they shall be *275 levied; a provision extended to personal property by an act of 1820-21. These provisions seem, at first, view, very odd, and almost unintelligible. Before they were enacted, a ca. sa. whether executed or not, neither bound nor in any way affected tire debtor’s property, real or personal: and these new enactments provide no moans, by which to render the binding force given to a ca. sa. executed, available to the creditor. Wc can readily understand, how a judgment binds a moiety of the debtor’s land; because it may be taken by elegit: how a fieri facias bound the debtor’s goods, from its date at the common law, and from its delivery to the sheriff by statute; because they might be taken under it, notwithstanding an alienation after the date in the one case, and after the delivery of the writ to the sheriff in the other: and how a writ of warranlia charlas, or a writ against an heir upon the obligation of his ancestor, binds all the lands of the defendant in the one case, and all the assets descended in the other, from their dates; because upon the judgments in such suits, the land itself may be taken. But there is some difficulty in comprehending how any proceeding, under which no property' can be taken, without the assent of the. debtor, can bind it, or in what way, or to what purpose or extent. Yet these provisions certainly meant to give some now capacity to the ca. sa. when executed; and it is our duty, to inquire into the true object, of the law, and to carry it into effect by the means intended, if that can he ascertained, or otherwise, by means most convenient and conformable to the general spirit, of our legislation. To this end, an attention to the state of the law, when these provisions were introduced, is necessary.
Before the statute of 21 Jac. 1. ch. 24. after a ca. sa. executed, the creditorkliad no further remedy upon his judgment, even if the debtor died in execution, except perhaps in tlie case of an escape. That statute authorized the creditor, in case the debtor died in execution, to resort to new executions against the debtor’s lands and goods, as if ho had never been taken in execution, with a proviso ex- *276 empling all lands, which the debtor might have sold bona fide f°r the payment of any of his creditors, and the money so applied. The provisions of that statute were incorporated into our code in 1726, with slight verbal variations, not varying the effect. And so the law continued until the revisal of 1792, when it was so changed, as to exempt only such lands as the debtor might have sold bond fide for the payment of any of his creditors at whose suit he was in execution, and the money so applied with their privity.
This was the state of the law, when the provision in question, in respect to lands, was introduced at the revisal of 1819. Still, as at the common law, a creditor, at whose suit the debtor was taken or charged in execution,-could have no further remedy upon his original judgment, unless the debtor died in execution, or perhaps in the case of an escape; and then, he was remitted to his remedies upon his original judgment, in no degree strengthened by the circumstance that the debtor had been in execution. But, if the debtor was discharged from custody under the acts for the relief of insolvent debtors, these statutes did not apply to the case;'and while in custody he might dispose as he pleased, provided it were done bond fide, of all his property, real and personal, which the creditor could not in any way reach or subject to his demand. Bullock v. Irvine, 4 Munf. 460. Again, one of the' effects of our acts for the relief of insolvent debtors, was to distribute all the effects of such a debtor, amongst all his creditors, at whose suit he was in execution, pari passu, without regard' to the dates of their judgments or executions, or of the levying of them.
At the revisal of 1819, the former provisions, in respect to the case of a debtor’s dying in execution, were retained unaltered; and two new provisions introduced, 1. thatevery conveyance, &c. of lands made by a debtor charged in execution shall be void as to the creditors at whose suit he is in execution, unless it be absolute and bond fide and made to pay or secure the debts of such creditors, and the proceeds paid or secured to be paid to them (dropping the *277 words, "with their privity," foimd hi the preceding section.) 2. "And that all executions of ca. sa. shall hind the real estate of the defend~ni, from the time when they shall be levied."
These provisions were certainly not intended to apply to the case of a debtor dying in execution; for that had been provided for in the sections immediately preceding, in a different way: in some respects more beneficial to the creditor, remitting him to the original lien of his judgment, and overreaching all alienations since its date, unless made for his satisfaction, whereas the section in question affected no lands alienated in any way before the levying of the capias: in some particulars less beneficial, the ca. sa. binding all, the original judgment only a moiety, of the debtor’s land. Nor were they intended to apply to the case of an escape; in which case, the creditor might perhaps resort to other executions on his judgment; or if not, there are no means in that case, by which any effect can be given to the binding force of the ca. sa., and, especially, those provisions cannot apply to the case of an escape, if there be any other case, to which they can be applied with effect, in the ordinary course prescribed by law. And that, I think, is the case of a discharge of the debtor under the acts for the relief of insolvent debtors, in which case, all his alienations, unless made for the payment of the creditors at whose suit he is in execution being avoided by the provision under consideration, the lands so alienated would vest in the sheriff for the benefit of those creditors, to be distributed among them pari passu, but for the provision declaring that each execution binds, the property from the time it was levied, which establishes the priorities amongst them, according to the dates of the levies. And this, I think, was one of the purposes of that provision ; whilst the other was, to deprive the debtor in execution, of thd privilege which he before had of giving a preference amongst his creditors and disposing of his property ad libitum, if it was done bona fide, and their swearing out of jail, and thus wholly frustrating the creditor at whose suit he was in execution.
*278 But then comes the question, which this case presents. Whether these provisions affect the rights of third persons, obtaining judgments against the debtor, and taking his property in execution while he is in custody? I doubt, whether this consequence was in the contemplation or design of tire legislature; but it seems to be necessary and unavoidable; for the same quality given to the ca. sa. executed, which, by binding the property, establishes priorities amongst the creditors at whose suit the debtor is in execution, must, from its very nature, and being given in general terms, operate throughout, and affect alike the rights of all persons indiscriminately.
I am sensible of the great harshness, and (in its practical application) inconveniences, of this new law: but those considerations belong to the legislature, and not to the courts of justice. There are, however, many palliating circumstances, and such as may prevent the consequence anticipated in the argument of this cause, that the execution of ca. sa. will be universally resorted to. In the first place, the law is totally unavailing, unless the debtor be discharged under the insol- • vent debtor’s acts; for, in no other case, is there any means of enforcing it. And the debtor’s lands may be extended under any judgment, rendered in favour of any other creditor, at any time before the levying of the ca. sa. and the extent cannot be disturbed, if the debtor be discharged as an insolvent, even though the judgment, under which he was in execution be anterior in date to that extended. So, an extent may be levied upon any judgment obtained while the debtor is in execution, and the property enjoyed as long as he remains in custody; and, unless he is discharged as an insolvent, the tenant by elegit cannot be affected, otherwise than he would have been liable to be affected if the ca. sa. had never issued, that is, by an extent on the prior judgment. And the whole of the personal property of the debtor in custody, may be taken in execution under any judgment no matter when obtained, or sold by him; and unless he avail himself of the acts for the relief of insolvent *279 debtors, dying in execution or escaping, the creditor at whose suit he was in execution, can never, by any means, subject the property or its proceeds so sold or taken in executiou.
In strictness, Thompson’s interest in the lot in question, could not be taken in execution nor transferred to Jackson, by the sheriff’s sale under the execution, it not being such, a trust as is subjected to execution by our statute. Yet the execution delivered to the sheriff, hound his right in equity, as it would have bound it at law, if his title had been legal, or such a trust as is subjected by the statute to execution. And Jackson’s purchase entitles him to he substituted to the rights of the commonwealth, to the extent of the price paid by him; and if the execution of the commonwealth had a priority over the rights of Heiske.ll, he might have availed himself thereof. In a court of equity, therefore, the rights of the parties, such as they are, have the same effect as if they had been legal.