Tucker, P.
I cannot think with the superiour court, that the escape of a debtor from execution at once invests the creditor with a right to charge his lands in equity, in the same manner as if he had. remained in custody and taken the benefit of the insolvent act. So to decide is to legislate, not to adjudicate. The provision might indeed be very just and very salutary, but the legislature alone can give it existence. Hitherto it has not done so. It has declared the conveyance of the debtor’s lands, indeed, to the prejudice of the creditor, to be null and void; but while the debtor remains in custody, he is not liable to be proceeded against in equity.* It has moreover declared that the lands shall be bound from the date of the levy; but they nevertheless cannot be charged by bill in equity, until the debtor takes the insolvent oath. They are indeed so far bound, that no subsequent sale of them can divest the right of the creditor to charge them whenever his rights become consummate by insolvency. But until then, they are only bound in like manner as goods are bound by the *507 delivery of a ji. fa. to the sheriff, to which it is obvious the statute had reference. The levy therefore of the ca. sa.* constitutes a lien sub modo only, which can never be available until it is consummate by insolvency. If ihe defendant dies in execution, the creditor is then remitted to his new execution, and even in that case cannot, I conceive, resort to the lien of the ca. sad Still less can he do so in case of the escape; for the very proceeding against the land is a waiver of the right to take the body, and is therefore a waiver of the ca. sa. For if the debtor were to surrender himself, or to be taken by the jailor on an escape warrant, he must be discharged, unless we admit the monstrous hypothesis that the creditor may hold the body and yet proceed against the property. Indeed it is obvious that if the creditor waives his ca. sa. he cannot avail himself of its lien: and if he does not waive it, then the debtor may return to custody, or be taken by the officer, who has a right to sue out an escape warrant himself; and thus the bill of the creditor must either be defeated, or he must be recognized as having the double remedy against the lands and body. This cannot be conceded. I am therefore of opinion that the decree of the circuit court is erroneous.
We come next to enquire whether the creditor had a right to waive his ca. sa. upon the repeated escapes of Stuart, and to apply to a court of equity to relieve him as" an elegit creditor. And I think he had. I am of opinion that upon the escape of a debtor, the creditor had at common law, and independent of the statute of Will. 3. a right to proceed against the sheriff, or to re *508 take the defendant, or to bring'an action of debt or scire facias upon the judgment, and thereupon have any execution whatever. Now if he has the capacity to issue a scire facias quare executionem, non, a court of equity consj¿ers-that sufficient, without the actual prosecution of the scire facias, provided it would have jurisdiction over the subject if the scire facias had been proceeded in, and the elegit actually issued and executed. This has been expressly adjudged in the case of a judgment which had been out of date many years. Burroughs v. Elton, 11 Ves. 29. And the same principle was recognized and adopted by the whole court in the case' of Fox’s adm’r v. Rootes and others, 4 Leigh 429. in note. In this case it appears clearly that the realty, which would be taken by an elegit, is altogether inadequate to pay the interest of the debt. Had it been issued, then, a court of equity would direct the sale of the moiety; and as there is a capacity to issue it, such sale may now be directed, unless the intervening rights of Neil forbid. Whether the transaction with him was bona fie or not, is, to say the least, so questionable, that it should not be respected until cleared of every fraudulent imputation by the verdict of a jury. This however will be unnecessary, as his rights must yield to those of the appellees, even though the transaction be perfectly fair. The right of the creditor, upon the escape of his debtor, to waive his unsatisfactory ca. sa. and to be remitted, upon suing out a scire facias, to his original right to sue out any species of execution at his election, revives in its full force the power and effect of his judgment. It resuscitates its lien upon all the lands the debtor had at the time of the judgment or which were subsequently acquired by him ; and the language of the elegit, and its command to the sheriff, will be precisely the same as if the ca. sa. never had issued. It will command him to deliver “a moiety of all the lands and tenements whereof the debtor at the day of obtaining the judg *509 ment was seized, or at any time afterwards,” and thus will overreach all mesne conveyances to purchasers with notice, according to the opinion of this court in the case of Fox's adm'r v. liootes and others, before cited. And though the purchaser Neil denies nolice, it makes no difference, for in truth his conveyance was void by law, as it was made when the ca. sa. was in full force, and its lien unimpaired. He could not in good faith buy what the law declared that Stuart should not sell; and the deed to him being altogether inoperative, because it was avoided by Jaw uno jlatu with its creation, it cannot stand in the way of the elegit creditor.
Upon the whole, I am of opinion to reverse the decree, and to send the cause back for further proceedings, leaving to the creditor the election of dismissing his bill and proceeding by scire facias and elegit, or of taking a decree in this case for the sale of a moiety of the lands in the proceedings mentioned.
Brooke and Parker, J. concurred.
The decree of the court of appeals was in the following terms:
“ The court is of opinion that there is error in the decree of the circuit superiour court, in this, that it was not competent to the creditor to proceed in equity to subject the lands of the defendant to sale in like manner as if he had taken the benefit of the act for the relief of insolvent debtors, in which, case alone the lien of the ca. sa. can be made available. But the court is of opinion that upon the escape of the defendant, it was competent to the creditor either to retake him by an escape warrant, or to waive his ca. sa. and sue out a scire facias quare executionem habere non debet, and so proceed by elegit to extend the lands and tenements which were of the defendant at the date of the original judgment: and the court is further of opinion that having a capa *510 city to sue out the scire facias and revive the lien, the creditor was entitled to come into equity to enforce a sale of the moiety extended (but no more); and that in this cause such decree should be rendered, in case the party should elect to take it, and it should appear that the rents and profits will not discharge the debt in a reasonable time. Therefore it is considered that the said decree be reversed and annulled, and the cause sent, back for further proceedings according to the principles above declared.”

 Jackson v. Heiskell, 1 Leigh 257. and the case between these parties decided in July 1833. — Note by the president.

 In the case between these parties in 1833, it is said that after the death of the debtor the lands may be proceeded against. But that means, by suing out an elegit; for at common law the death of the debtor in execution was a complete satisfaction of the judgment. To remedy this, the statute was made; but it only gives a right to a new execution, and does not enforce the ca. sa. lien.— Note by the president.