PACIFIC NATIONAL BANK *vs.* ADELAIDE WINDRAM & others.

Suffolk.   March 22, 23. — June 29, 1882.   ENDICOTT & FIELD, JJ., absent.

A person cannot settle his property in trust to pay the income to himself for life, with a provision that it shall not be alienated by anticipation, so as to prevent his creditors from reaching the income by a bill in equity under the Gen. Sts. c. 113, § 2, cl. 11; and this rule applies to a married woman settling her separate property after marriage, where she has by law the right to make contracts as if she were sole.

If a person, having made a settlement in trust of his own property by which he is entitled to the income, assigns his interest under the settlement as security for a debt, he cannot, as against the creditor, subsequently modify the terms of the trust, so as to make the payment of the income discretionary with the trustee.

MORTON, C. J.   The defendant, Mrs. Windram, after her marriage, being possessed in her own right of personal property, conveyed it to trustees by an indenture dated in March 1879. The trusts declared by the indenture are, that the trustees are to pay the net income to her semiannually during her life " upon her sole and separate order or receipt, the same not to be by way of anticipation," and to pay the principal to her children upon her death, or when, after her death, they arrive at the age of thirty years, except as to a sum not exceeding twenty-five thousand dollars, over which she retains a power of appointment by will.

After this settlement in trust, she jointly with her husband borrowed a large sum of money of the plaintiff, and, as security therefor, assigned and transferred to the plaintiff, by an instrument in which her husband joined, all her right and interest to and in the income of said trust fund accruing under the said indenture.   The object of this bill in equity, which is brought under the Gen. Sts. c. 113, § 2, cl. 11, is to reach and apply, in payment of the plaintiff's debt, the income to which she became

entitled under the indenture after the assignment to the plaintiff. The provision that the trustees are to pay the net income to her upon her sole receipt, and not "by way of anticipation," is clearly intended to restrain the power of the *cestui que trust* to alienate the income in advance ; and the case therefore raises the question, whether such restraint of alienation is valid as against subsequent creditors or purchasers with notice.

It was decided in the case of *Broadway National Bank* v. *Adams, ante,* 170, that the founder of a trust for the benefit of another may by suitable provisions restrain the power of the *cestui que trust* to alienate the income by anticipation, and protect the income from the claims of his creditors until it is paid over to him. In that case, it was not necessary to consider whether a man could settle his own property in trust to pay the income to himself with a like restraint of alienation which would be valid. It seems to us that the two questions are quite different.

The general policy of our law is, that creditors shall have the right to resort to all the property of the debtor, except so far as the statutes exempt it from liability for his debts. But this policy does not subject to the debts of the debtor the property of another, and is not defeated when the founder of a trust is a person other than the debtor. In such case, the founder, having the entire *jus disponendi* in disposing of his own property, sees fit to give to his beneficiary a qualified and limited, instead of an absolute, interest in the income. Creditors of the beneficiary have no right to complain that the founder did not give his property for their benefit, or that they cannot reach a greater interest in the property than the debtor has, or ever had. But when a man settles his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors, while he retains the beneficial use of it. The practical operation of the transaction is, that he transfers a portion only of his interest, retaining in himself a beneficial interest, which he attempts by his own act to render inalienable by himself and exempt from liability for his debts.

To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of

exemption from his debts, seems to us to be going further than a sound public policy will justify. No authorities are cited in favor of such a rule. In England it is the settled rule that the founder of a trust in favor of a third person (except married women) cannot, by a clause restraining alienation, put the income out of the reach of the creditors of the beneficiary. See cases cited in *Broadway National Bank* v. *Adams*, ante, 170.

In Pennsylvania, where the English rule is rejected, and the same rule, as to the power of a founder of a trust in favor of a third person, adopted by us in *Broadway National Bank* v. *Adams*, is upheld, the courts yet hold that a person cannot so settle his own property in trust, as to put his right to the income retained by him beyond the reach of his creditors, by a provision against alienation or otherwise. *Johnston* v. *Harvy*, 2 Penn. 82. *Mackason's appeal*, 42 Penn. St. 330. See also *Lackland* v. *Smith*, 5 Mo. App. 153.

It is true that a man, who is not indebted, may by a voluntary conveyance made in good faith transfer his property so as to put it out of the reach of future creditors. When a man transfers a trust fund, of which the income is to be paid to him during his life, and the principal at his death to be paid or transferred to others, the principal may be beyond the reach of his future creditors; but we are of opinion that his right to the income which he retains in himself may be alienated by him, is liable for his debts, and may be reached in equity.

Another question, not free from difficulty, arises in this case, and that is whether this rule applies in the case of a conveyance of her property in trust by a married woman. In England, where, as we have before said, the general rule is that restraints of alienation in wills or deeds are invalid, the Court of Chancery from the time of Lord Thurlow has recognized an exception to the rule in favor of married women. *Parkes* v. *White*, 11 Ves. 209. *Jackson* v. *Hobhouse*, 2 Meriv. 483. *Woodmeston* v. *Walker*, 2 Russ. & Myl. 197. Numerous other cases might be cited.

The reason of the exception is, that a married woman is not *sui juris*, and that such a restraint of her power of alienation is necessary as a protection to her against the coercion and influence of her husband.

By the common law of England, a married woman could not hold any separate property. The settlement upon her by means of a trust of an equitable separate estate, was the invention of equity, and the Court of Chancery allowed the clause against anticipation, in order to give full effect to the estate itself, and to secure to her, free from the influence of the husband, the benefit intended by the settler.

But the legislation of this Commonwealth has essentially changed the common law status of a married woman, especially in respect to her holding separate property. By our statutes, a married woman is now enabled to take, hold, manage and dispose of property, to make contracts, and to sue and be sued, in the same manner as if she were sole. Pub. Sts. c. 147. Except as to dealings with her husband, she is made a person sui juris. The statute intends, what it declares, that she shall hold her separate property in the same manner as if she were sole, with the same rights and privileges, and also subject to the same rules, responsibilities and liabilities, as a feme sole.

Courts of equity upheld the restraint of alienation in favor of a married woman because of her disability during coverture, and as an incident of the trust estate necessary for her protection. The statutes having removed her disability, and having made unnecessary the creation of a trust estate, the incidents of the trust estate and the equitable rights growing out of it no longer remain in her favor. She is put upon the same footing as if she were a feme sole. She no longer needs any protection against the marital rights of her husband. It is argued that she still needs protection against his persuasion and undue influence. The statutes have made such provisions as were deemed necessary to meet this danger, by providing that, upon her application to the Supreme Judicial Court, a trustee may be appointed, and she may thereupon convey her separate estate to the trustee upon such trusts and to such uses as she may declare. Pub. Sts. c. 147, § 13.

For these reasons, we are of opinion that the provision in the indenture of March 1879, intended to restrain Mrs. Windram's power of alienating the income of the trust fund, is invalid; and that the plaintiff is entitled to the income after the assignment

to it, or after notice thereof was given to the trustees, if they have paid it to Mrs. Windram before such notice.

We need not consider what effect the modification of the trusts made in September 1880 may have upon the rights of other parties. By this modification, the trustees, instead of paying the income to Mrs. Windram, were to disburse it for her benefit, as they should see fit. It is clear that it would be a gross fraud to allow it to defeat the rights of the plaintiff under its prior assignment, and the presiding justice who heard the case rightly ruled that it was incompetent and immaterial as against the plaintiff.

The result is, that the plaintiff is entitled to a decree, the terms of which must be settled before a single justice.

*Decree for the plaintiff.*

*E. S. Mansfield,* for the plaintiff.
*A. S. Wheeler & J. H. Young,* for the defendants.