Menken v. Brinkley.

\* MENKEN *v.* BRINKLEY.

(*Jackson.* May 14, 1895.)

1. SPENDTHRIFT TRUSTS.

The case of Jourolmon *v.* Massengill, 86 Tenn., 81, determining that, under the Act of 1832 (Code, § 4283), one person may convey property in trust for the benefit of another, and so limit and restrict it as to exempt it from the debts of the beneficiary thereafter created, does not authorize the creation of such a trust by a person for his own benefit. (*Post, pp. 722–737.*)

Code construed: § 5026 (M. & V.); § 4283 (T. & S.).

Cases cited: Jourolmon *v.* Massengill, 86 Tenn., 81; Henson *v.* Wright, 88 Tenn., 501; Turley *v.* Massengill, 7 Lea, 353; Hooberry *v.* Harding, 10 Lea, 392; Hawkins *v.* Pearce, 11 Hum., 44; Mills *v.* Mills, 3 Head, 705; 91 U. S., 716; 111 U. S., 542.

2. SAME.

Such a trust cannot be created by a grantor, he being the only beneficiary, either by a direct exemption of the property from his future debts, or indirectly, by leaving it discretionary with the trustee to allow him benefits from the property. (*Post, pp. 728, 729.*)

3. JUDGMENTS BEFORE JUSTICES OF THE PEACE IN OTHER STATES, UNDER ART. IV., SEC. 1, OF CONSTITUTION OF THE UNITED STATES.

A judgment of a Justice of the Peace in another State falls within the provision of Art. IV., Sec. 1, of the Constitution of the United States, requiring each State to give full faith and credit to the judicial proceedings of every other State. (*Post, pp. 737, 738.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, J.

---

\* Syllabus prepared by the Judge rendering the opinion.—REPORTER.

46—10 P

---

---

GEORGE E. NEWHARDT, THOMAS H. JACKSON, and JOHN H. WATKINS for Menken.

TURLEY & WRIGHT for Brinkley.

WM. M. SMITH, Sp. J.   On December 10, 1887, Robert C. Brinkley, a young man of improvident and extravagant habits, executed a conveyance, by which he transferred a large amount of real estate therein described, part of which is in Shelby County, Tennessee, to his half brother, Hu. L. Brinkley, and his brother-in-law, C. C. Currier, upon certain trusts specifically defined and set out in said instrument.

As the contest in this cause is over this deed, it is necessary that its contents be stated, and it will perhaps be more satisfactory to set out the deed in full.   It is as follows:

"This indenture, made between Robert C. Brinkley, party of the first part, and C. C. Currier and Hu. L. Brinkley, trustees, parties of the second part, witnesseth, that upon the trusts and for the purposes hereinafter set out, the party of the first part has bargained and sold, and by these presents does grant, bargain, sell, and convey, unto the parties of the second part, their heirs and assigns, as trustees, the following described real estate, situated in Shelby County, in the State of Tennessee, to wit:   *   *   * To have and to hold, with all of the improvements and appurtenances, all of the real estate so hereinbefore described to the parties of the second part,

their heirs and assigns, in fee simple. And the party
of the first part, for himself, his heirs and personal
representatives, does hereby covenant with the parties
of the second part, their heirs and assigns, that he
will forever warrant and defend the title to the
property so conveyed against the legal claims of all
persons whomsoever.

"But this conveyance is made upon the trusts
and conditions following: The party of the first part
is now considerably in debt. It is not the purpose
of the party of the first part to acknowledge hereby
any specific debts, nor in any way to estop himself
or the parties of the second part from contesting
the validity of any claim that may be made, or
from making any legal defense thereto, but it is
desired that his just debts shall be paid out of the
property hereby conveyed, or its proceeds, and the
payment of such debts is one of the trusts and
purposes of this conveyance. The property hereby
conveyed is mostly unimproved and unproductive, and
another purpose and trust is, that it may be im-
proved, and provision made for the payment of the
taxes, insurance, and other costs and expenses at-
taching to it. A further trust and purpose is, that
the parties of the second part shall control, manage,
protect, and preserve the property, and have full
power and discretion to deal with it in all respects
as to them may seem best for the efficient discharge
of the trusts. Therefore, the parties of the second
part are hereby vested with the absolute title to all

of said property, and with full power to sell and convey it, or any part of it, or to exchange it, or any part of it, for other property, in their own discretion, whenever and however they may deem best, and no purchaser from them is required to look to the application of the purchase money. Said parties of the second part are further clothed with full power and discretion to use any portion of said property, or the proceeds of any of it when sold, or any property acquired by exchange, or its proceeds, in improving other portions of the trust by erecting such buildings or making such other improvements as the parties of the second part may deem best, and also to use the same in paying the just debts of the party of the first part, and in reimbursing the parties of the second part for any advances made, and for paying debts which the parties of the second part may find it necessary or expedient to make, as trustees, upon the faith of the said property, or to incur and raise by mortgages or liens upon said property. The parties of the second part may also, in their discretion, make advances from said property, or its proceeds, from time to time as they may choose to do so, to the party of the first part, provided that they shall not, in any one year, advance or pay to him more than the sum of six hundred dollars, until the net annual income from said property shall amount to the sum of six hundred dollars per annum, and, if its net annual income shall ever exceed that amount,

then the parties of the second part may increase such advancements in their discretion. The discretion to make such advances or payments, whenever it may to them seem best, is not limited, however, to advances out of the income or profits of the property, but extends to the corpus or its proceeds.

"It is expressly hereby provided that the parties of the second part are to be under no obligation whatever to advance or pay to the party of the first part anything whatever out of said property or its proceeds, and that the party of the first part shall have no right to assert any claim therefor, nor to anticipate or alienate any claim therefor, nor in any way to interfere with the control or management of the said property, nor to incumber it. The power to sell and convey hereby conferred upon said trustees includes the power to mortgage for the purpose of the trusts; and the general scope of the powers shall include leasing, renting, insuring, paying taxes, and doing any and all things which said trustees shall consider proper. If at any time said trustees shall deem it advisable to advance their own money, or use their own credit in raising money, for the purposes of the trusts, the property held in trust shall be bound in their hands for such advances, or for debts or obligations so incurred. As compensation for services rendered in the execution of this trust, said trustees shall be entitled to, and may retain out of any moneys coming into their hands, a commission

of ten per cent. upon all the money that shall pass through their hands as such trustees. If they shall acquire other property by purchase or exchange, they will take title as trustees, subject to the trusts, powers, and discretions, and to all the provisions of this conveyance. This trust is to continue during the life of the party of the first part; but it is hereby expressly provided that the said trustees may, at any time after two years from the date hereof, at their discretion, and solely at their discretion, put an end to it by a reconveyance of their trust property to the party of the first part; and, also, that the said trustees may at any time, with the concurrence of the party of the first part, appoint some other person or persons as trustee or trustees, and convey the trust property to such person or persons, to be held under the trusts and provisions of this conveyance. Whenever there is more than one trustee, in the case of the death, resignation, or refusal to act of one, the trust shall survive and be exercised fully by the other.

"The party of the first part expressly reserves the power to appoint, by his last will and testament, the person or persons who shall take the property held under this trust at his death, and to provide for and control the destination of said property. In 'the event that he shall die without exercising this power of appointment, the property then held under this trust shall go, at his death, absolutely and in fee, under the laws of descent and distri-

bution of the State or States in which it shall be situate, as if he had owned it at the time of his death, and had died intestate in regard to it.

"It is hereby expressly provided that the said parties of the second part, or the survivor of them, or their successor or successors, shall not be required to execute any bond or other security as trustee or trustees under this conveyance.

"In witness whereof, the party of the first part does hereto set his hand and seal on this tenth day of December, 1887.

"ROBERT C. BRINKLEY (Seal)."

After the execution of this deed, R. C. Brinkley, the grantor, contracted other debts, which have been reduced to judgments at law against him, upon which executions have been returned unsatisfied, and, on July 11, 1893, the J. S. Menken Company, one of the judgment creditors, filed the original bill in this cause, claiming that said R. C. Brinkley has an equitable interest in the property conveyed, and seeking to subject it to the satisfaction of the judgment. Such proceedings were had that other judgment creditors of this State became parties complainant, and also several creditors with judgments rendered in California, to which State, it seems, Brinkley had removed.

The Chancellor's decree was in favor of all parties complainant, and subjected the property conveyed to the satisfaction of their debts. From this decree

H. L. Brinkley, the acting trustee (the other having
resigned), alone appealed.

At the outset, it is proper to say that we do
not think that it was the intention of the grantor
in this deed to provide for the payment of debts
which he might contract after its execution. On the
contrary, his intention clearly was that the property
conveyed should not be subjected to any debts there-
after created by him during the continuance of the
trust.

This trust is what is denominated an active trust,
conveying the legal title to the trustees, and imposing
active duties on them to be performed. *Jourolmon* v.
*Massengill*, 86 Tenn., 96–99; *Henson* v. *Wright*, 88
Tenn., 501. In this, as in all other trusts, there
must be a *cestui que trust*, and it is evident that
the grantor himself is the beneficiary. We cannot,
therefore, yield to the ingenious argument of coun-
sel for appellant that R. C. Brinkley, the grantor,
has no interest in the trust property which he can
enforce. If the trustee should claim the right to
withhold all benefits from the grantor, there can be
no doubt, the question of fraud out of the way,
that the grantor could assert and maintain his rights
in a Court of Equity. If the grantor in this deed
reserves no rights to himself, it follows that it is
a trust without a beneficiary, and the trustee be-
comes, in effect, the owner of the property con-
veyed. But we go further, and hold that, unless
the owner of the property can convey it in trust,

and reserve to himself benefits directly, and, at the same time, exempt it from liability for his future debts, he cannot do so indirectly, by conferring discretion on the trustee to withhold all benefits from him; for, if this can be done, the owner need only select as trustee a near kinsman or tried friend, on whom he may rely for liberality, and thus indirectly accomplish what he cannot do directly.

Taking this view of this deed, it becomes necessary to determine whether the owner of property may convey it in trust, he himself being the *cestui que trust*, and exempt it from the payment of debts which he may thereafter contract.

Whether one person can convey property in trust for the benefit of another, who is *sui juris*, and so limit and restrict it as to shield it from the debts of the beneficiary, has been much discussed. The English Courts, as stated by this Court in *Jourolmon* v. *Massengill*, *supra*, hold that such exemption cannot be made, and most of the States of the Union have followed the English rule. Mr. Gray, Story Professor of Law in Harvard University, published, in 1883, a book on Restraint on Alienage of Property, in which he collated the decisions of the several States on these ''spendthrift trusts,'' as they have been aptly termed. The result was that, up to that time, only two States, Pennsylvania and Massachusetts, held restraints on alienation and liability for debts valid. Gray on Restraint on Alienation, Sec. 175, *et seq*. To the authority of the

cases in these two States must be added the great weight of the Supreme Court of the United States. In the cases of *Nicholls* v. *Eaton*, 91 U. S., 716, and *Spindle* v. *Shreve*, 111 U. S., 542, the same doctrine is held.

Mr. Gray places Tennessee in the list of States which have followed the English rule, and held such trusts invalid in so far as they attempt to restrain alienations, either voluntary or *in invitum* by creditors. This he was authorized to do by the cases of *Turley* v. *Massengill*, 7 Lea, 353, and *Hooberry* v. *Harding*, 10 Lea, 392, which he cites. But the later case of *Jourolmon* v. *Massengill*, 86 Tenn., 81, overrules these two cases, and upholds these restraints in a trust created by one person for the benefit of another. The decision is based on the Act of 1832 (Code, § 4283; M. & V., § 5026). But it has been nowhere held that the owner of property may himself convey it in trust, he being the *cestui que trust*, and exempt it from liability for debts which he may create. And we think the section of the Code just referred to, in direct terms, gives the creditor, whose execution has been returned unsatisfied in whole or in part, the right to reach, in the Chancery Court, and subject to his judgment, property held in trust for his debtor, when the trust has been created by the debtor himself. The case of *Jourolmon* v. *Massengill*, *supra*, in construing this section, holds that such property cannot be reached when the trust has been created

by a person other than the debtor; and it just as clearly follows that it may be reached when the trust is created by the debtor himself. But, in the absence of a statute positively so directing, we could never hold that the owner of property can so convey it as to enjoy the benefits arising from it and shield it from debts which he may create, even if he ·be a spendthrift; and we have yet to learn that a spendthrift has rights superior to those of other people. If a spendthrift may do this thing, any other person can; and what would be the condition of society, commercially, if every man can make his neighbor his trustee to manage his property so that he may enjoy its benefits, and, at the same time, protect it from his debts, we will not endeavor to depict.

It is a general rule that all property to which a debtor has a right, may be subjected to his debts, unless the State shall see fit to exempt a portion of it. *Hawkins* v. *Pearce*, 11 Hum., 44.

As one of the counsel for complainants has well said, it is an elementary principle that a party *sui juris* cannot so convey his property as to enjoy the benefit of its income, and exempt it from his debts: See Tiedeman on Real Property, Sec. 503; 4 Kent Com., p. 311, note *a;* 2 Perry on Trusts, Sec. 555; 23 Am. & Eng. Ency. of Law, p. 10, and notes; *Harding* v. *St. Louis Life Insurance Co.*, 2 Tenn. Ch., 465; *Jourolmon* v. *Massengill*, 86 Tenn., 104, 105.

In Pennsylvania and Massachusetts, the decisions of which States it has already been said have been most favorable to spendthrift trusts, attempts have been made to uphold against creditors trusts like the one under consideration, but they have failed.

In *Mackason's Appeal*, 42 Penn. St., 330, decided in 1862, the Court say: "This statement brings us to the simple inquiry, can the owner of property so dispose of it for his own use, benefit, and support, as to put it beyond liability for his future debts, he being and continuing *sui juris*, and there appearing to be no reason except to withdraw it from such liability, and thus retain the temporal ownership without its incidents? This would be a startling proposition to affirm. It would revolutionize the credit system, entirely destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against frauds. Every man about to engage in business, where there was a chance of loss, would place himself under the pupilage of trustees, and everybody's estate would be passing under settlement deeds and trustees' accounts, through the Courts, before, in the natural course of things, the jurisdiction of the orphan's Court would attach. Such consequences from judicial action need not be deprecated in advance, for they can never occur."

And in *Ghormley* v. *Smith*, 139 Penn. St., 584, it is said: "But whilst, in the recognition of spendthrift trusts, we have departed from the English

rule, there is no case in Pennsylvania which goes to the extent of recognizing a spendthrift trust, in which the grantor is himself the sole beneficiary for life, with power to dispose of the trust property at death, yet neither the income nor the *corpus* of the estate is subject to his debts.   *   *   *   The policy of our law is otherwise; and in *Mackason's Appeal* it has been plainly so decided." This case was decided in 1891.    And in Massachusetts the decision is the same way.    *Pacific Bank* v. *Windrom*, 133 Mass., 175.    Nor do we think that the cases of *Ashhurst's Appeal*, 77 Penn. St., 464, and *Earp's Appeal*, 75 Penn. St., 119, are to the contrary. As we understand these cases, they only hold that such trusts are valid as between the grantor and grantee, and cannot be revoked by the grantor.

Counsel for appellant seem to shrink from arguing that the owner of property may convey it in trust and exempt it from debts thereafter created, reserving to himself a substantial benefit. They prefer to rely on the position that the grantor in this deed reserves no substantial interest in the property. This contention we have already noticed. They refer, however, to the case of *Mills* v. *Mills*, 3 Head, 705, as an authority to support the attempted exemption in this deed.    The case cited is poorly reported, the reporter making no statement of facts at all, but referring to the opinion for the facts, and in the opinion we find no statement which shows, distinctly, the points at issue.    It is true

the opinion shows there was a deed by the owner
of the property conveying it to a trustee in trust to
pay existing debts and to hold the residue for the
support of the grantor and his family during the
life of the grantor, with remainder at his death to
his children. Here seems certainly an interest to
the extent of his support, jointly with his family,
reserved to the grantor, but the conveyance was for
the benefit of the wife and children, with remainder
to the children, and with a provision that the in-
come of the property could only be subjected to
such debts or contracts of the grantor as should be
made for the necessary support of himself or his
wife and children; and that the body of the fund,
or the property purchased therewith (the trustee hav-
ing power to invest the fund in other property,
with other large powers), should not be subject to
any debt thereafter made by the grantor, unless au-
thorized by the trustee.

It is also said in the opinion "that the body of
the property cannot be applied to any debt of the
said James T." the grantor, "contracted after the
making of the deed, being satisfied, as we are, that
the trustee never, at any time, gave his sanction to
any of said debts. Neither can the interest, rents,
or hires be applied to any such debt, unless shown
to be for the necessary support of the said James
T., or his wife and children."

From this we may infer that debts were claimed
in the suit. But, as the deed itself was a proper

deed, and free from fraud in so far as it provided for the support of the grantor's wife and children, and as the only interest reserved to the grantor was the right to a support for himself in connection with them, that is the only interest which his creditors possibly could have reached. And there is nothing in the opinion to show that judgment creditors with returns of executions unsatisfied, were seeking to ascertain and subject that interest.

On the contrary, if creditors were proceeding at all, it is evident that they were attempting to subject the entire body of the property, or the entire profits. We do not think, therefore, that this opinion can be taken as an authority to support the contention of appellant. And it may be observed that it might very well have been held in *Mills* v. *Mills* that the grantor had no separable interest in the property conveyed which could have been separated from that of his wife and children, the other beneficiaries, so as to be subjected to his debts, as was held in Virginia in *Markham* v. *Guerrant*, 4 Leigh, 279, and *Johnston* v. *Zane*, 11 Grat., 552. See Gray on Restraint on Alienation, Secs. 176 and 242–249. And it is significant that this case has not been cited in the opinions in any of the reported cases on this subject in this State.

It is also insisted for appellant that, by the reservation of the power to appoint by will the persons to whom the property shall go after the death of the grantor, R. C. Brinkley, and by the pro-

vision that, in case he fails to make an appointment, it shall go to the persons who would be entitled under the laws of descent and distribution, an interest in remainder is created, which at least cannot be subjected to the debts of the grantor. There is certainly no remainder in any appointee under a will, for a will may never be made, and, if made, could only take effect at the death of the testator, and then only upon the property remaining. And if Brinkley should die intestate, his property would descend to his heirs and distributees, whether the deed so provided or not. But, beyond this, there is a clause in the deed giving the trustees, after two years, the power to terminate the trust, and reconvey the property to Brinkley. This seems to us conclusive that no remainder interest was created, or intended to be created; and, even if there were a remainder, the rents and profits, or the property during Brinkley's life, could be subjected to his debts.

The complainants have prosecuted a cross-appeal from that part of the decree in which the Chancellor refused to set aside this deed. In this the decree is clearly correct. The deed is good, as between the grantor and the trustee; the grantee, as long as the trustee chooses to continue the trust. It is only invalid in so far as it attempts to shield the property from the creditors of the grantor. And the property is a trust fund in the hands of the trustee for the payment of the debts of the

grantor, whether contracted prior or subsequent to the execution of the deed of trust. *Mackason's Appeal*, 42 Pa. St., 330.

No question is made as to the validity of the debts of the Tennessee creditors, complainants in the cause. Having judgments and returns of *nulla bona*, they are clearly entitled to have their judgments satisfied, under Sec. 4083 (M. & V., 5026) of the Code. But there are several judgments rendered in California, two of which were before Justices of the Peace of that State, which are embraced in the Chancellor's decree.

No case in this State has been brought to our notice deciding that a judgment before a Justice of the Peace of another State falls within the provisions of Article IV., Section 1, of the Constitution of the United States, requiring each State to give full faith and credit to the judicial proceedings of every other State. But the current of authority is that way, and we now so determine. See 2 Black on Judgments, Secs. 934, 935; 12 Am. & Eng. Ency. of Law, p. 505, note 1. And the Code, § 3796 (M. & V., § 4549), provides a method for the authentication of such proceedings. The other California judgment is of a Court of Record.

There is no formal defense of *nul tiel record*, but various objections to the California records and proceedings are made, and assigned as error; and it is insisted that they are properly made under the agreement of counsel entered into before the hearing

47—10 P

of the case below. It may be that the objections might have been made below, under this agreement; but, if they were so made, and were acted on by the Chancellor, the record fails to show it, and they cannot be noticed now. If made there, the defects in the certifications of the proceedings, if they really exist, might have been remedied by leave to have them amended; and other difficulties, now suggested, might have been cured by proof. This Court will not put the Chancellor in error, if there really was error as to these objections, unless they were made before him, and acted on by him.

These California creditors are, therefore, entitled to relief under Section 4279 (M. & V., § 5040) of the Code, which is as follows: "When a judgment has been recovered in any other State against a resident of such State, and the creditor has exhausted his legal remedy, the real or personal property of the debtor in this State may be subjected to the satisfaction of such debt by bill, stating the facts under oath, and filed in the Courts of the district in which the property is situated."

The result is, that the decree of the Chancellor, subjecting the property conveyed by the trust deed to the satisfaction of the several judgments of complainants, is affirmed, and defendant, H. L. Brinkley, the trustee, will be directed to pay them out of the trust property.