# Richmond.

PETTY, TRUSTEE, v. MOORES BROOK SANITARIUM AND OTHERS.

March 10, 1910.

Absent, Buchanan, J.

1. FRAUD—*Spendthrift Trust—Settlement of Grantor Upon Himself—Exemption From Debts—Discretion of Trustee.*—The owner of property, even though a spendthrift, cannot convey his property to a trustee\for his sole benefit for life, with power to dispose of the trust property at his death, and yet exempt the property from the payment of debts he may thereafter contract. The fact that the trustee is invested with discretion to withhold from such grantor all benefits arising under the trust does not alter the case. A spendthrift, as such, has no rights superior to those of other people.

Appeal from a decree of the Corporation Court of the city of Lynchburg. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. T. Coleman* and *Leon Goodman,* for the appellant.

*F. C. Moon,* and *W. C. Carrington,* for the appellees.

HARRISON, J., delivered the opinion of the court.

On the 28th day of August, 1902, Harry S. Langhorne, an improvident young man, created a "spendthrift trust" for his own benefit by conveying a valuable estate possessed by him to a trustee upon the following trusts: To secure his then existing indebtedness and certain debts of his mother. After these debts

had been satisfied, together with certain costs mentioned, the residue of the property conveyed, or its proceeds, was to be invested by the trustee to the best advantage, paying to the said Langhorne from time to time out of the accruing net interest and profits such sum as the trustee might, in his discretion, deem proper for the maintenance, support and other necessities of the said Langhorne. In this connection, the deed provided that neither the trustee named, nor any succeeding trustee should be compellable to pay to the said Langhorne any part of such interest or profits; provided, however, that if the trustee, or his successor as such, together with George W. Langhorne, father of the grantor, or the trustee acting solely after the death of the father, should judge that the grantor's habits and steadiness were such that it would be prudent to entrust him with the full management of the *corpus* of the property conveyed, or any part thereof, then the trustee was directed to turn over the whole, or such part thereof as might be so deemed prudent, to the grantor. The deed further provided that, in the event of the death of Harry S. Langhorne without the principal or *corpus* of the property being turned over to him, the trustee should pay the same, or such part thereof as might remain in his hands or under his control, together with any accumulated interest or profits, to such person or persons as the said Harry S. Langhorne might by last will and testament appoint; or, in default of such appointment, to the person or persons who would be entitled under the statute of descents and distributions as his heirs and distributees, but without being liable to any debt he might contract. The deed further provided that any successor to the trustee named should be appointed by the Corporation Court of the city of Lynchburg.

The debt asserted in the bill of complaint was contracted by Harry S. Langhorne after the deed of August 28, 1902, was executed and recorded. The decree appealed from annulled and set aside the deed as to this debt, holding that the property conveyed, after the satisfaction of the debts secured by the deed,

was liable for debts of the grantor contracted since its execution.

The sole question presented by this appeal is whether or not, after the execution of this deed, Harry S. Langhorne had any interest in the property conveyed which could be subjected by a creditor whose debt was contracted after the deed had been executed and recorded.

It is clear from the deed that, notwithstanding the broad and uncontrolled discretion lodged in the trustee, the purpose and expectation was that the grantor would thereafter be permitted to enjoy the benefits of the property thereby conveyed, while at the same time it would be shielded from liability for any future debts that he might contract. In all trusts there must be a *cestui que trust*, and it is manifest from the deed that Harry S. Langhorne was to have the sole beneficial use of the property conveyed, certainly during his life, with power to dispose of what remained at his death by will.

Unless the owner of property can convey it in trust and reserve to himself benefits directly, and at the same time exempt it from liability for his future debts, he cannot do so indirectly by conferring discretion on the trustee to withhold all benefits from him; for if this can be done, the owner need only select as trustee a near kinsman or tried friend on whom he may rely for liberality, and thus indirectly accomplish what he cannot do directly. *Menkin v. Brinkley,* 94 Tenn. 721, 31 S. W. 92; 2 Am. & Eng. Dec. in Eq., 619. The question to determine is therefore whether the owner of property, even though he be a spendthrift, may convey it in trust, he himself being the *cestui que trust,* and exempt it from the payment of debts he may thereafter contract.

The cases and text-writers are innumerable in which judges and authors have discussed with learning and ability the question whether one person can convey property in trust for the benefit of another who is *sui juris,* and so limit and restrict it as to shield it from the debts of the beneficiary. In England,

from which country we derive the principles of our jurisprudence, the courts have steadfastly adhered to the common law rule that spendthrift trusts were invalid because repugnant to the ordinary rights of property and contrary to public policy. In this country a number of the States of the Union have departed from the English rule and upheld spendthrift trusts where the settlement had been made by one person for the benefit of another, with an exemption from any debts that the beneficiary might create.

In the recent case of *Hutchinson* v. *Maxwell,* 100 Va. 169, 40 S. E. 655, 93 Am. St. Rep. 944, 57 L. R. A. 384, where the subject of a spendthrift trust created by one person for the benefit of another was involved, Judge Buchanan, speaking for this court in a well considered opinion, says: "The decisions of the American courts upon this question are conflicting, and the reasoning of the courts which upheld spendthrift trusts is unsatisfactory, and, as it seems to us, at war with well settled principles of law as to the incidents of property, whilst the English courts of chancery, and the American courts which follow them, seem to us to be sustained by the better reason, and to be in furtherance of a wise public policy." The views and principles announced in this case are entirely opposed to the proposition here contended for, that a man can convey his property to a trustee in such a way that he can have an estate to live on, but not an estate to pay his debts with.

In the State of Pennsylvania, where the American doctrine of spendthrift trusts had its birth, the right of a person to convey his property to a trustee so that he may enjoy its benefits and exempt it from liability to his debts thereafter contracted, is emphatically denied. In *Mackason's Appeal,* 42 Pa. 330, 82 Am. Dec. 517, the court says: "This statement brings us to the simple inquiry, can the owner of property so dispose of it, for his own use, benefit, and support, as to put it beyond the reach of liability for his future debts, he being and continuing *sui juris,* and there appearing to be no reason therefor except-

ing to withdraw it from such liability, and thus retain the temporal ownership without its incidents? This would be a startling proposition to affirm. It would revolutionize the credit system entirely, destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against frauds. Every man about to engage in business where there was a chance of loss, would place himself under the pupliage of trustees, and everybody's estates would be passing under settlement deeds and trustees' accounts through the courts before in the natural order of things the jurisdiction of the orphan's court would attach. Such consequences from judicial action need not be deprecated in advance, for they never can occur."

In *Ghormley* v. *Smith,* 139 Pa. 584, 21 Atl. 135, 23 Am. St. Rep. 215, 11 L. R. A. 565, the court says: "But, whilst in the recognition of spendthrift trusts we have departed from the English rule, there is no case in Pennsylvania which goes to the extent of recognizing a spendthrift trust, in which the grantor is himself the sole beneficiary for life, with power to dispose of the trust property at death, yet neither the income nor the *corpus* of the estate subject to his debts. The policy of our law is otherwise, and in *Mackason's Appeal* it has been plainly so decided."

In Massachusetts, the decisions of which State have been favorable to spendthrift trusts, the attempt to uphold against creditors trusts like the one under consideration have failed.

In *Bank* v. *Windram,* 133 Mass. 175, the court says: "The general policy of our law is that creditors shall have the right to resort to all the property of the debtor, except so far as the statutes exempt it from liability for his debts. But this policy does not subject to the debts of the debtor the property of another, and is not defeated when the founder of the trust is a person other than the debtor. . . . But when a man settled his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to

put his own property out of reach of his creditors, while he retains the beneficial use of it. The practical operation of the transaction is that he transfers a portion only of his interest, retaining in himself a beneficial interest, which he attempts by his own act to render inalienable by himself and exempt from liability for his debts. To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of exemption from his debts seems to us to be going farther than a sound public policy will justify. No authorities are cited in favor of such a rule."

The deed involved in the case of *Menkin* v. *Brinkley,* 93 Tenn. 721, 31 S. W. 92, *supra,* was very similar to the deed in the present case. The opinion in that case is well considered and the authorities are reviewed at length. After pointing out that under the Tennessee statute the trust subject could be reached by creditors in such a case, the court says: "But in the absence of a statute positively so directing, we could never hold that the owner of property can so convey it as to enjoy the benefits arising from it, and shield it from debts which he may create, even if he be a spendthrift. And we have yet to learn that a spendthrift has rights superior to those of other people. If a spendthrift may do this thing, any other person can; and what would be the condition of society commercially if every man can make his neighbor his trustee to manage his property, so that he may enjoy its benefits, and at the same time protect it from his debts, we will not endeavor to depict. It is a general rule that all property to which a debtor has a right may be subjected to his debts unless the State shall see fit to exempt a portion of it."

In the 26 Am. & Eng. Ency. of Law (2d ed.), p. 147, citing numerous authorities in support of the text, the law is stated as follows: "A donor or settlor cannot, even in jurisdictions where spendthrift trusts are allowed, so dispose of his property for his own use, benefit, or support, as to put it beyond the reach of liability for his future debts. If such donor continues

*sui juris,* and if there appears to be no reason for such disposition, except to withdraw his property from such liability, he cannot through the medium of a trust thus retain the temporal ownership with the usual incidents."

Professor Gray, of Harvard University, who has collated all of the authorities and given this subject a most exhaustive consideration, after concluding that a spendthrift trust founded by one person for the benefit of another cannot be sustained upon any sound principle, says: "A clause forbidding alienation being invalid in a settlement upon others, it is *a fortiori* invalid in a settlement upon the settlor himself." Gray on Restraints Upon Alienation (2d ed.), sec. 268-a.

No case has been cited and we are not aware of one which has carried the doctrine of spendthrift trusts to the extent proposed in this case. A man who enjoys the benefits of wealth, however imprudent and shiftless he may be, should also bear its responsibilities, one of which is liability for his just obligations.

The decree appealed from is right, and it must be affirmed.

*Affirmed.*