COOKE TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, TRUSTEE UNDER THAT CERTAIN DEED OF TRUST DATED NOVEMBER 12, 1941, IN WHICH GEORGE MARION LORD IS NAMED AS TRUSTOR *v.* GEORGE MARION LORD, ROSEMARY MARION LORD, JACK W. WILLIAMS, DBA OAHU COLLECTION AGENCY, FRANK NICHOLS, LIMITED, AN HAWAIIAN CORPORATION, M. R. A. LTD., DBA TERRITORIAL COLLECTORS, JOHN DOE FIRST TO JOHN DOE FIFTIETH INCLUSIVE, JANE DOE FIRST TO JANE DOE FIFTIETH INCLUSIVE, RICHARD ROE FIRST TO RICHARD ROE FIFTEENTH INCLUSIVE, AND MARY ROE FIRST TO MARY ROE FIFTEENTH INCLUSIVE, AND RUTH JAMES LORD.

NO. 2958.

ARGUED JANUARY 26, 1955.          DECIDED AUGUST 31, 1955.
REARGUED APRIL 5, 1955.

TOWSE, C. J., STAINBACK AND RICE, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from the decree of the circuit court of the first judicial circuit of the Territory of Hawaii.

A bill for instructions was filed by the Cooke Trust Company, Limited, trustee under a deed of trust dated November 12, 1941, executed by George Marion Lord as trustor with the Cooke Trust Company, Limited, as trustee.

The deed of trust recited that the trustor "in order to make adequate and safe provisions for the care and management of the property hereinafter referred to for his own benefit during his lifetime," transferred and set over certain property to the trustee.

The chief provisions of the trust deed involved in the bill for instructions are that the trustee shall pay all income from the trust estate to and for the account and benefit of the trustor during his lifetime and that "if at any time or from time to time during his lifetime the Trustor shall be or become unable to provide for his own support and maintenance and the support and mainte-nance of his family, then and in any such case, to pay and distribute to the Trustor such part or parts of the capital of said trust estate as the Trustee may at any time or from

time to time in its absolute discretion consider to be necessary or advisable for the proper support and maintenance of the Trustor and his family, * * *."

Another provision is that in case the trustor shall become insolvent or be declared bankrupt, or shall assign or charge, or attempt to assign or charge, the income or capital of such trust estate, the income and principal would cease to be payable to the trustor and thereafter during the lifetime of the trustor it should be payable to the trustee in trust and the trustee should thereafter in its discretion pay all or any part of such income or capital to or apply the same to or for the maintenance and support of the trustor and/or spouse and/or issue, if any, or accumulate the same to be added and held and administered as part of the trust estate after the death of the trustor.

The trust instrument provided for distribution of income and capital after the trustor's death and further provided that the trustor "expressly reserves to himself the absolute right at any time or from time to time during his lifetime to alter, amend and change all or any of the terms and provisions herein set forth for the management of the trust estate and/or the payment of the income from and distribution of the capital of the trust estate in any manner whatsoever after the death of the Trustor, including * * * the power to designate persons other than those hereinbefore designated to whom all or any part of the income from or capital of the trust estate is to be paid and distributed * * *."

The trust instrument also provided that upon the written order of the trustor the trustee would assign, transfer and deliver to the trustor capital assets of the trust having a value not in excess of $5,000; there also were the usual provisions with reference to the expenses of administration and management and payment to minor

beneficiaries, and funeral expenses of the trustor, all of which are immaterial to a decision of this case.

The trustor's family at the time of the execution of the instrument consisted, and still consists, of his wife and a daughter.

Under the clause permitting the trustor at any time during his lifetime to change the provisions relative to the payment of income and the distribution of the capital after his death, the trustor had prior to 1950 made five or six changes in the beneficiaries who would receive income and/or principal after his death, the details of which are not necessary to a decision of this case.

Soon after the creation of the trust the trustor exercised the privilege of having the trustee assign to him capital assets in the value of $5,000.

There is no dispute that the trustor became and has remained insolvent since about 1950 or 1951.

A number of creditors have judgments against the trustor for varying amounts and have initiated garnishment proceedings against the trustee.

The question upon which the trustee requests instructions is whether the assets of the trust estate, both principal and/or income, are property of the said trustor subject to garnishment by his judgment creditors.

As pointed out by this court in the case of *Welsh* v. *Campbell,* 41 Haw. 106, the overwhelming weight of authority in America upholds the validity of spendthrift trusts against creditors. However, the authorities are equally overwhelming that the settlor cannot create a spendthrift trust in favor of himself good as against either prior or subsequent creditors. (Griswold, *Spendthrift Trusts,* § 474, pp. 542-544; *Restatement, Trusts,* § 156, p. 386 (1935); 1 Scott, *Trusts,* § 156, p. 782; 1A Bogert, *Trusts and Trustees,* § 224, p. 493; note in 119 A. L. R. 35.)

Such transaction need not involve any question of

fraudulent conveyance to hinder or delay existing creditors. Although there are many statutes on the subject, the rights of creditors are not dependent upon the law relating to fraudulent conveyances though the interest which creditors may reach varies according to the terms of the trust.

As the cases state, "A man can not put his own property beyond the reach of creditors and at the same time reserve substantial interests in it or control over it." (Griswold in 44 Harvard L. Rev. 208.)

"Public policy does not countenance devices by which one frees his own property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust. * * *" (54 Am. Jur., *Trusts,* § 166, pp. 134-135.)

"A person cannot place or settle his property in trust with remainder over, reserving to himself the beneficial interest for his life, subject to the expenses of his trust, and thereby put his life interest beyond the reach of his creditors, either prior or subsequent, by any provision restricting the power of alienation or otherwise." (Moore, *Fraudulent Conveyances,* vol. 1, p. 422.)

Where a settlor creates a spendthrift trust for himself, such transaction is highly objectionable from the point of view of existing and future creditors. The trust is not void but the spendthrift clause is. (1A Bogert, *Trusts and Trustees,* § 224, p. 493.)

"As to future creditors, the spendthrift trust for the

settlor seeks to lay a trap, to enable the settlor to enjoy an income which gives him the appearance of having capital without actually having it, to mislead creditors into the extension of credit when there is no basis therefor." (1A Bogert, *Trusts and Trustees,* c. 13, § 224, p. 495.)

Where the settlor creates such a life interest in himself, as stated by Griswold the courts are unanimous in holding the restraint is invalid and the settlor's interest can be reached by his subsequent creditors, citing Gray, *Restraints on Alienation,* 2d ed., sections 171-174.

"(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.

"(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit." (*Restatement, Trusts,* § 156, p. 386 [1935].)

A so-called discretionary trust for the support of the settlor to protect himself against his own improvidence or incapacity for management will not protect the settlor against his own debts or acts of alienation. (54 Am. Jur., *Trusts,* § 147, p. 122.)

The case of *Nelson* v. *California Trust Co.,* 202 P. (2d) 1021, 33 Cal. (2d) 502, was a case holding that where a settlor is the sole beneficiary of a spendthrift trust, his creditors can reach the principal and income for the satisfaction of their claims, the court stating: "* * * it is against public policy to permit one to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it."

"It would be a startling and revolutionary doctrine to hold that this reserved interest cannot be reached by the

plaintiff as a creditor. If such is the law it would make it possible for a person free from debt to place his property beyond the reach of creditors, and secure to himself a comfortable support during life, without regard to his subsequent business ventures, contracts or losses." (*Schenck* v. *Barnes,* 50 N. E. 967 [1898], 156 N. Y. 316, 321, 41 L. R. A. 395.)

The Tennessee case of *Menken* v. *Brinkley,* 94 Tenn. Rep. 721, held that although one person may convey property in trust for the benefit of another and so limit and restrict it as to exempt it from the debts of the beneficiaries thereafter created, this does not authorize the creation of such a trust by a person for his own benefit, further stating: "Such a trust cannot be created by a grantor, he being the only beneficiary, either by a direct exemption of the property from his future debts, or indirectly, by leaving it discretionary with the trustee to allow him benefits from the property." On page 731 the court said: "As one of the counsel for complainants has well said, it is an elementary principle that a party *sui juris* cannot so convey his property as to enjoy the benefit of its income, and exempt it from his debts. See Tiedeman on Real Property, Sec. 503; 4 Kent. Com., p. 311, note *a;* 2 Perry on Trusts, Sec. 555; 23 Am. & Eng. Ency. of Law, p. 10, and notes; *Harding* v. *St. Louis Life Insurance Co.,* 2 Tenn. Ch., 465; *Jourolmon* v. *Massengill,* 86 Tenn., 104, 105."

Again: "If the grantor in this deed reserves no rights to himself, it follows that it is a trust without a beneficiary, and the trustee becomes, in effect, the owner of the property conveyed. But we go further, and hold that, unless the owner of the property can convey it in trust, and reserve to himself benefits directly, and, at the same time, exempt it from liability for his future debts, he cannot do so indirectly, by conferring discretion on the trustee to

withhold all benefits from him; for, if this can be done, the owner need only select as trustee a near kinsman or tried friend, on whom he may rely for liberality, and thus indirectly accomplish what he cannot do directly." (*Menken* v. *Brinkley, supra,* at pp. 728, 729.)

See also *State* v. *Nashville Trust Co.,* 190 S. W. (2d) 785, 28 Tenn. App. 388.

Though the discretionary trust, as we have pointed out, is in substance similar to a spendthrift trust and a creditor of the beneficiary cannot reach any part of the income or principal of the trust estate (see citations *supra*), yet "Where, however, the settlor creates such a discretionary trust of which he is a beneficiary, his creditors can reach his interest, and can compel the trustee to pay over so much as in his discretion he is authorized to pay to the settlor." (1 Scott, *Trusts,* § 156.2, p. 784.)

See Griswold, *Spendthrift Trusts,* section 481, page 552.

As the numerous cases point out, under a trust where the trustee has absolute discretion to pay the income or expend it for the settlor's benefit such trustee, even though he had a like discretion to expend it for others, can still pay all of it to the settlor; and such would open the way to evasion by the settlor of his just debts and permit him to still have the full enjoyment of the income from his property. Further, subjecting such property to the settlor's creditors does not deprive others, to whom the trustee in his discretion might pay the income, of anything to which they are entitled by right since they cannot compel the trustee to pay any of the income to them. (*In re Estate of Camm,* 76 C. A. [2d] 104, 172 P. [2d] 547; *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 219, 27 A. [2d] 166; note 119 A. L. R. 35; *Pacific National Bank* v. *Windram,* 133 Mass. 175, 176.)

Nor would a provision that the trustee may in his dis-

cretion withhold the income from the settlor and accumulate it, place the income beyond the reach of his creditors. (*Petty* v. *Moores Brook Sanitarium,* 110 Va. 815, 817, 67 S. E. 355.)

The so-called forfeiture provision contained in paragraph 5 of the trust instrument — providing that in case the trustor shall become insolvent, etc., then the income and capital of the trust shall cease to be payable to him and shall be payable to the trustee, and the trustee shall thereafter in its absolute discretion pay all or any part of the income and capital for the maintenance and personal support and benefit of the trustor and/or his spouse and/or issue or accumulate the same to be added to a part of the trust estate after the death of the trustor — does not in substance provide for a forfeiture of the settlor's interest as the trustee still may pay all to the settlor and no other person can compel the payment to himself.

The forfeiture provision apparently attempts to forfeit to Cooke Trust Company the trust estate which is already owned by Cooke Trust Company, trustee; if it should give it absolutely to Cooke Trust Company there would not be any beneficial interest outstanding. See discussion in *Menken* v. *Brinkley,* 94 Tenn. Rep. 721.

The whole purport of the instrument is, as stated in the recital, to make "safe provisions * * * for his own benefit during his lifetime."

If there were a forfeiture provision in case of bankruptcy of the trustor whereby the income would be payable to another, a different situation might arise. It is not necessary for us in this proceeding to pass upon the validity of a forfeiture proceeding in the sense that it might pass income to others free from the creditors of the trustor-beneficiary. See *In re Burroughs-Fowler,* Law Reports, Chancery Edition 1916, 2 Ch. 251, a case where such a forfeiture provision in a similar trust was enforced

in favor of the wife in an English court. See also Trustee Act, 15 George V, c. 19, 33-(1) (1925), where any income is directed to be held on protective trusts for the benefit of any person for the period of his life or for any less period and the principal beneficiary does any act which prevents him from receiving the income during the rest of the period, the income shall be held upon trust for the maintenance or support of the principal beneficiary and his or her wife or husband, if any, and/or children, etc.

Attorneys for the trustee placed great reliance upon the case of *Herzog* v. *Commissioner of Internal Revnue,* 116 F. (2d) 591. This case simply involved the question of the gift tax under the federal statute. The settlor assigned certain property to a trustee to pay the income to the grantor and his wife. The trustee was given discretion regarding income payments but upon the death of the wife or upon her ceasing to live with him the income was to go to the grantor and his children with discretion in the trustee as to allotment; after the death of the grantor there were specific provisions as to the disposition of the income and the corpus and there was no right in the grantor to alter this whatsoever. The federal court held the entire fund was subject to the gift tax and not merely the remainder as the settlor claimed, pointing out that where the grantor reserved no power to change the beneficiaries, it was a complete gift. Further, the court seemed to assume that where the settlor makes himself the beneficiary he is in the same position as if such trust were set up by a third person. There was some discussion as to New York law on the question of the rights of creditors to receive certain income. The only question was whether there was a gift of complete interest, which was taxable under the federal statute.

It is not necessary to discuss the numerous decisions holding that where there is no power to change the remain-

dermen there is a vested remainder, but where the settlor has such power to change the remaindermen by will or by changing the trust instrument itself the remainder is not vested and the trustor has an equitable interest therein which can be reached by his creditors. See discussion and cases in Griswold, *Spendthrift Trusts,* section 475, page 544, entitled *"Life interest in settlor with remainder over to a named or designated person"* wherein he states: "* * * if the settlor has reserved no power over the remainder, and the transfer is not fraudulent, the conveyance of the remainder constitutes a present gift and is just as much beyond the reach of creditors as any other completed gift."

But in section 477, page 547, entitled "Life interest in *settlor, remainder as he may by will appoint, * * *"* and in section 478, page 548, he states that the creditors may reach the principal when the settlor-beneficiary retains power to appoint remaindermen, stating: "* * * the great majority of the cases have rightly decided that the entire trust property is subject to the claims of creditors."

Counsel for the trustee argues that in the event this court holds that paragraph 5 of the trust instrument is operative, the life interest of the life beneficiary terminated upon the happening of these events and concludes that because his life interest is forfeited the trustor does not have a right and power to designate a beneficiary to receive a distribution of the income and capital of the trust after the death of the life beneficiary.

This conclusion does not follow inasmuch as the trustor in paragraph 9 "expressly reserves to himself the absolute right at any time or from time to time *during his lifetime to alter, amend and change all or any of the terms and provisions herein * * * for the * * * payment of the income from and distribution of the capital of the trust estate*

*in any manner whatsoever after the death of the Trustor,* * * *" etc. (Emphasis added.)

The general rule is that trusts may be terminated when all interested parties so desire even though the trust instrument provides expressly that the trust shall be irrevocable. (Griswold, *Spendthrift Trusts,* § 528.1, pp. 613-614; *Kellett* v. *Sumner,* 15 Haw. 76.)

In this paragraph Griswold points out that if the settlor has reserved the power to alter the trust or to redesignate the beneficial interests even though he has reserved no power to revoke the trust, he may designate a new beneficiary and by obtaining that beneficiary's consent then terminate the trust, citing cases from New York and Pennsylvania.

*Kellett* v. *Sumner,* 15 Haw. 76, contains a statement that a trust cannot be terminated by consent of interested parties unless *all consent,* and in the dissenting opinion at page 99 it is stated by Perry, J., that: "It may be assumed for the purposes of this case that a deed of trust irrevocable by the grantor alone may nevertheless be revoked by him *if all of the beneficiaries consent* * * *." (Emphasis added.)

The case of *Lord* v. *Lord,* 35 Haw. 26, is cited as contrary to the numerous decisions that a trustor with the consent of the beneficiaries may revoke the trust. This case is where the settlor created a trust chiefly to provide alimony for his divorced wife. The complaint alleges that the settlor had fraudulently purported to change the beneficial payments to an incompetent son so that the trust might be revoked and his wife deprived of her alimony. This is apparently one of those situations where a hard case makes bad law. Although the case was decided long after *Kellett* v. *Sumner, supra,* there was no attempt to distinguish the cases; the *Kellett* case seems correct. There is a forceful dissenting opinion in the *Lord* case which

expresses the sounder view of existing trust law.

In *Weymouth* v. *Delaware Trust Co.*, 45 A. (2d) 427, the syllabus states: "Generally, where settlor is sole beneficiary and is not under an incapacity, he may compel termination of trust which he created." In this case the settlor was entitled to all income throughout his life and at his death the sum remaining was distributable to his executors or administrators. It was held that the settlor was the sole beneficiary and might revoke the trust even though it had spendthrift trust provisions and provided that "This trust shall be irrevocable." (*Stephens* v. *Moore*, 298 Mo. 215; *Sturgeon* v. *Stevens*, 186 Pa. 350; *Cole* v. *Nickel*, 43 Nev. 12.)

From the above authorities it would seem that the trustor-cestui truly has made the trust settlement "for his own benefit during his lifetime" and has retained complete equitable title to the remainder as well as made it possible for a compliant trustee to pay him all of the income during his lifetime, or by securing a compliant beneficiary to revoke the trust.

While, as pointed out in *Welsh* v. *Campbell*, 41 Haw. 106, there are many other reasons both for and against a spendthrift trust, there are particularly good reasons in view of modern trends why there should be legislation upon this subject.

For example, many writers argue that a man should be permitted to create a trust within reason for his own benefit free from the claims of creditors. Mr. Costigan, in 22 California Law Review 471, in an article entitled *"Those Protective Trusts Which Are Miscalled 'Spendthrift Trusts' Reexamined"* among other things states "that one who is actually a spendthrift and who knows that he will be an easy prey for designing persons who seek to tempt and impose upon wasters," should be permitted to "create such a reasonable income spendthrift trust for

himself, so long as, and to the extent that, his spendthrift trust is not in fraud of existing creditors or a subterfuge used with fraudulent intent to enable him to speculate to the detriment of future creditors." (p. 495.)

Mr. Griswold, in his book *Spendthrift Trusts,* after showing the decisions are quite uniform that a person may not create a spendthrift trust for his own benefit free from the claims of creditors, questions whether this is a desirable state of the law, arguing that a man who has earned his own way should have the same opportunity for protecting himself against adversity as a man who takes support from another. He might also, as did Mr. Costigan, ask why should not a man who recognizes his own weaknesses be permitted to settle a reasonable amount for the protection of himself and his family (which, incidentally, in many jurisdictions he can do by way of insurance annuities) free from the claims of his future creditors.

There may be a partial answer to this under the Hawaiian statute on spendthrifts whose estates may be placed under guardianship for the protection of themselves and their families. (R. L. H. 1945, § 12512, and cases cited thereunder.) There have been in this jurisdiction many cases of such guardianships, including at least one of Hawaii's rulers. (*In the matter of the Estate of His late Majesty Lunalilo,* 3 Haw. 519.) It could be argued that a spendthrift even knowing his own weakness may object to the publicity of a court proceeding and the registration of a decree of guardianship under our spendthrift statute; but if a statute should permit the creation of a spendthrift trust by a settlor for his own benefit, the same amount of publicity must be given by registration, or otherwise, if the public is to be protected.

Or, again, it might be desirable to pass a Trustee Act similar to the 15 George V Act heretofore referred to.

However, these are matters for the legislature and not

for the courts in the absence of statute.

To prevent future questions, the trustee should be fully instructed:

1. That paragraph 5 of the trust instrument has been operative from the time of the insolvency of George Marion Lord which occurred in the year 1950, and the provisions of paragraph 3 of the trust instrument were no longer effective from and after paragraph 5 becoming operative;

2. That both the income and the principal of this trust estate are subject to the claims of creditors;

3. That the provisions of paragraph 9 of the trust instrument continue to be in force and George Marion Lord has the right and power thereunder to designate a beneficiary or beneficiaries to receive distribution of the income and capital of the trust estate upon his death; that in the exercise of such right he may name a beneficiary other than the one presently designated; that this right remains until his death, or until the trust is revoked by the trustor and the beneficiaries during his lifetime.

*D. N. Ingman* (*Ingman & Ingman* on the briefs) for Ruth J. Lord, respondent-appellant.

*T. W. Flynn, Jr.* (also on the brief) for George M. Lord, respondent-appellee.

*H. W. Conroy* (*Henshaw, Conroy & Hamilton* on the brief) for Cooke Trust Company, Limited, Trustee under that certain deed of trust dated November 12, 1941, in which George Marion Lord is named as Trustor, petitioner-appellee.

*S. Landau* (*Landau & Fairbanks* and *Lee & Fukushima* and *G. Nakamura* on the brief) for Jack W. Williams, dba Oahu Collection Agency, respondent-appellee.

*G. Nakamura* for Frank Nichols, Ltd., and M. R. A., Ltd., dba Territorial Collectors, respondents-appellees.