(32 Misc. Rep. 358.)

UNITED STATES TRUST CO. OF NEW YORK v. CHAUNCEY et al.

(Supreme Court, Special Term. New York County. August, 1900.)

1. WILLS—PERPETUITIES—TRUSTS.
    When a trust is created for the benefit of the grantor for life, with power of appointment by will, and a will is executed so nearly contemporaneous therewith as to make it a part of the same transaction, the estate created by the trust deed is not to be included in the estate created by the will, in ascertaining whether such estate is void, as a perpetuity.

2. SAME—APPOINTMENT.
    Where a testator, acting under the assumption that he had a power of appointment by will of certain property, when he had absolute title thereto, recited such power in his will, and directed the disposition of the property, the will is of the same effect as if he had treated the property as belonging to him.

3. SAME.
    A will directed that one-third of certain property belonging to testator should go to his father, and two-thirds to his sister, during their lives, and on their death should return to his estate, and, in case one survived the testator, such survivor should take the shares of both, and after the death of both, or if they did not survive the testator, the property should form a trust for certain charitable purposes. Held, that such devise was not illegal, as creating a perpetuity.

4. SAME—RIGHT OF APPOINTMENT—EXECUTION.
    Where a trust reserves the right of appointment by will to the grantor, an appointment will be effective, though made in a will executed a short time prior to the creation of the trust.

Action by the United States Trust Company of New York against Henry Chauncey and others for the construction of the will of Henry Chauncey, Jr.

Edward W. Sheldon, for plaintiff.

Lewis L. Delafield, for defendant Lucy Chauncey.

Ronald K. Brown, for defendant Harry P. Nichols, trustee.

Stetson, Jennings & Russell (Edward R. Greene, of counsel), for defendant Henry Chauncey.

Hawkins, Delafield & Sturgis (Lewis L. Delafield, of counsel), for executors of Henry Chauncey, Jr., deceased.

Stickney, Spencer & Ordway (Samuel H. Ordway and Otto C. Wierum, Jr., of counsel), for defendant Mitchell.

RUSSELL, J. Although the will of Henry Chauncey, Jr., which is urged as exercising the power of appointment referred to in the deed of trust executed to the plaintiff by him, antedates that deed of trust by 13 days, it is better to consider the operative force of the trust deed at the threshold of the case, and then determine whether

the will embarrasses the effective force of the trust deed to nullify any of its beneficial qualities, or is an ineffective execution of the power of disposition reserved by the trust instrument. On the 10th day of July, 1897, Henry Chauncey, Jr., in the city of New York, conveyed to the plaintiff trust company one-third share in real property known as "51 Walker Street," in that city, and in certain then existing leases of portions of said realty, and also personal property consisting of bonds and mortgages, in trust—First, to pay the net income to the trustor quarter-yearly during his life; and, second, the death of the trustor should terminate the trust, and the trust estate, with the accretions, should vest absolutely in the persons appointed by the last will and testament of the trustor, or, if he failed to make such appointment, to his heirs at law, per stirpes, and not per capita, and the trustees should convey and deliver the trust estate as directed. Henry Chauncey, Jr., died on the 27th day of September, 1899, leaving, him surviving, his father and sister, the defendants Henry Chauncey and Lucy Chauncey, his sole heirs at law. These two persons, therefore, would have taken the property in case no appointment by will had been made by Henry Chauncey, Jr., unless the will diverted the property in other directions. The only appointment made by the trustor was by the will executed May 28, 1897, shortly prior to the execution of the deed of trust; and that will did purport to execute a power of appointment as to some property, and did provide for the disposition of his property in a different manner from its course in case of intestacy. We therefore enter upon the consideration of the will, which stood unrevoked at death; and it may be considered to be the fixed purpose of the testator at the time it was made, and at the time of his death, with the clearly-expressed and manifest intention on his part, to execute a power of appointment which had in some manner been given to him by another, or reserved by himself, as to certain property, and to distinctly provide for any other property of his own which was not affected by the power of appointment. And it is also well to remember that the only power of appointment in existence at his death was that concerning the one-third interest in the realty and personalty referred to in the deed of trust. It is also necessary to carry in mind that the evidence shows, both affirmatively and by its negations, that the property referred to by him, in exercising a power of appointment by will, was the same property upon which the deed of trust operated, although he mistakenly refers in the will to his mother's having given him the power of appointment, when in truth she devised and bequeathed that property to him absolutely.

By the first clause of the will the testator bequeathed jewelry and bric-a-brac to the father, Henry Chauncey, for life, and upon his death to the sister, Lucy. By the second clause he referred to his inheritance from his mother, Mrs. Emily Howland Chauncey, of one-third of a trust established in her favor by the will of her father, Samuel S. Howland, and erroneously alluded to a power of disposition of such one-third by her will; the fact being that he took by devise and bequest from her, without being incumbered by any reservation of estate whatever. The testator undoubtedly had in mind

a mere recommendation of the testatrix in her will that her two children, Henry and Lucy, should put their shares in trust, to receive the income for life, and dispose of the principal by their last wills and testaments. The testator, Henry Chauncey, Jr., in the second clause of his will referred to, also reciting that he acted by virtue of the power of disposition conferred upon him by his mother's will, did direct and appoint, in relation to the said one-third interest, that one-third thereof should go to his father, and two-thirds to his sister, during their life or lives, and upon their death or deaths should return to his estate, and, in case the testator's death should find only the father or the sister living, the share of the one deceased should go to the other. By the fourth clause of the will he gave and bequeathed all his property not disposed of to his sister, Lucy, for life, and on her death it should return to his estate. The fifth clause provides that "upon the deaths of my said father and sister, or in case neither survive me, then I make the following dispositions of my property." Under this part of his will he gave his military pictures to the Eighth Regiment of Infantry, and directed his executors to sell the remaining property, to establish a trust fund in the New York Life Insurance & Trust Company, to be devoted to sending the children of the poor for vacation in the summer, to be expended under the direction of the rector of the Church of Holy Trinity, who is at present the defendant Henry P. Nichols, and the president of the Children's Aid Society, and the editor of the newspaper called "Life," who were appointed trustees to execute that object. He thus not only provided the benefit for the poor children in case his own death found neither his father nor his sister living, but also gave an attempted vested interest, consummate upon either their joint or respective deaths, to the trustees named for such benevolent object. And it is under the claim that this scheme suspends the power of alienation of realty and of disposition of personalty for more than two lives in being that the sister and the father unite in asking the court to adjudge the devise to the trustees for the children void, as an unsuccessful plan to avoid the statute against perpetuities.

Did the deed of trust create a life estate in the trustor, which must be added to the life estates created by the will, in determining whether the statute has been violated? It may be urged that, where a testator devises property which is enjoyed by a life tenant other than himself, the provisions he makes for successive lives upon the termination of that precedent life estate must take into consideration the existing tenancy. But how can his own life be considered as a suspension of the power to alienate with reference to estates created by an instrument which brings those estates into being only when his own life interests have ceased? The instant the will operates, there is no pending suspension of the power of alienation, except for the future estates created by that instrument itself. I cannot, therefore, perceive that the deed of trust affects the provisions of the will so as to render them offensive to the law in case they would otherwise be valid. And it may also be gravely doubted whether that deed of trust imposed a single fetter upon the hand of the testator to write such a will as he saw fit. He was not executing a power of

appointment given to him by another. His was not an act which derived its force from a delegated authority. He was disposing of his own property, and, if executing a power, was simply·formally doing an act which he subsequently, in the deed of trust, reserved the power to do. It is also difficult to imagine who could object to that testator's conveying absolutely the property referred to in the trust instrument during life, or devising it to take effect at his death, notwithstanding the trust deed. After that deed was delivered, the vital ownership of the income and the property itself remained in the trustor. The United States Trust Company had nothing but a legal title,·with no beneficial interest whatever, and no person, living or unborn, had·the slightest pecuniary interest in the property conveyed. Why, then, did not the testator have the same absolute power over his estate after the trust deed that he did before, if he chose by any significant act to terminate the trusteeship, which was in fact nothing better than a mere power of attorney? In re Ogsbury, 7 App. Div. 72, 39 N. Y. Supp. 978; Trust Co. v. Livingston, 133 N. Y. 125, 128, 30 N. E. 724.

The deed of trust having no appreciative effect upon the estates or interests devised or bequeathed by the will, we must scrutinize that will, as an independent instrument, to ascertain whether the benefit for the poor children of New York shall fail, and the purpose of the testator thus be defeated, whether this large portion of his estate which came to him from his mother goes into intestacy, or whether it passes under the fourth clause to his sister, Lucy. It is not claimed that the charitable provision of itself alone offends against the statute in regard to perpetuities, or that at the time the will was made that provision was void for indefiniteness of beneficiary, especially since the statute of 1893 (Laws 1893, c. 701). ·Did, therefore, any precedent life estate, which could not be dropped under the provisions of the statute as being the latest, intervene, which itself offended the statute against suspension of the power of alienation? The one-third part to his father, and the·two-thirds part to his sister, were to be held by them for their life or lives, and upon their death or deaths to return to his estate, with the devolution to the survivor of the two directly at his death if only one should be living. And upon their deaths, either before his own or afterwards, then the benevolent provision should take effect. It is needless to cite precedents to sustain the primary rule of construction in such cases,— that the courts will effectuate the intent of the testator, if it can be fairly ascertained, and construe language used by him, even if faulty in its expressiveness, so that his purpose may be maintained. The leading purpose of his will is manifest. The sister and father had each received from the deceased mother a like third to his own. Surviving him, they would enjoy those thirds, and he wished them also to have the life use of his own third. After they ceased to need or enjoy this third part of his, he wished the remainder to serve a most beneficent purpose for bringing solace and comfort to the children of the poor. Nowhere in his will is it manifest, except by the strictest grammatical construction of words, which does not fairly represent the idea or spirit, that he meant a shifting or contingent interest by

the death of either father or sister to be held up indefinitely until the death of both, so that the children of the poor might not receive their benefits until the expiration of an uncertain period, during which the shifting part was held by his estate.   He does not say in words that the death of the father or the sister, after his own death, shall give to the survivor for life the estate of the deceased one, as he · did in reference to a death occurring before his own, which provision is the key to his intent, were one otherwise wanting.   But if the construction that they are to hold their respective shares for their joint lives, and upon their joint deaths those shares should return to his estate, is a natural one, then the intent manifest by the provision that, if either the father or sister should not survive him, that share of the deceased should go to the survivor, may easily indicate that the provision for their joint lives is to be construed to give to the survivor of the two, both being alive at his death, the share that had fallen from the one who died.   This construction fully accords with his plan of benefit to the father and the sister, so long as that benefit can be of service to them, without the withdrawal of any part to outside purposes so long as either father or sister survive.   Were not this construction entirely practicable, there would be no insurmountable difficulty in separating the shares taken by the father and sister at his death, each holding one-half of the third for his or her life, and at death that half passing to his estate, to be instantly operated upon by the devise and bequest to his trustee for the benefit of the children of the poor.   By this construction neither share would be held up unenjoyed by any living person until the death of both father and sister, but each share would be disposed of instanter at the death of the life tenant.   Therefore, by either of the constructions suggested, there is no suspension of power of alienation beyond two lives.   As, however, it becomes necessary, both by request of all the parties interested, and because it is very proper to have the judgment declare the interest of those concerned in the estate of the deceased testator, this court adopts the construction that, during the joint lives of the father and sister, each takes one-half of the third, and upon the death of either the life share of that deceased one passes to the survivor, and after the death of the second the title goes to the trustee for the benefit of the children of the poor, as directed in the will.

Under the facts as they existed, and were known to the testator at the time he executed the will and the deed of trust, I regard both instruments as steps in the unit period of the execution of a purpose determined upon by him in obedience to the spirit of his mother's recommendation.   Though 13 days apart in point of time, they may, for the purposes of this action, be regarded as simultaneous acts. Therefore the appointment declared by the will,.which will remained in force at the time of the testator's death, long after the execution of the deed of trust, was the appointment referred to in the deed of trust, unless revoked by a later change of purpose.   Such revocation never was made, and a power of appointment may be exercised by will which simply disposes of the property as though the testator were devising his own property, instead of executing a power of ap-

pointment conferred by another.   Hutton v. Benkard, 92 N. Y. 295; Lockwood v. Mildeberger, 159 N. Y. 182, 53 N. E. 803.   Were not the will to be construed as technically exercising the power of appointment, what difference would it make?   It mattered not to the testator whether he gave the property to his beneficiaries, because of an unlimited power to dispose by way of appointment from another, or because he was exercising his own right to dispose of his own property.   He gives this part of his estate, in explicit terms, to the father, sister, and trustee for the poor.   There is nothing in the evidence or in the will or deed of trust which signifies the slightest probability of such a misconception in the source of his power to dispose of this property as would have changed the plan of the benefits he wished to confer by his will.   The vital, substantial thing he was resolved to do, and which he executed in the solemn form by which an instrument made in view of death is executed, was to leave his property to the beneficiaries named, in the manner and form which his judgment had determined.   He knew that he was enjoying this one-third part of his mother's estate, that he had the power to dispose of that one-third part, and that he had fully determined what he wished to do with it.   How, then, can any court set aside his testament as ineffective, even if it called his execution of a power of appointment defective? And what is there to prevent the execution of his wishes by the construction that he disposed of this estate, even though it were not the proper execution of a power of appointment?

Let judgment be directed declaring that Henry Chauncey and Lucy Chauncey each take for life one-half of the property referred to in the second division of the will, the share of the one dying to go to the other for life, and the whole to pass upon the second death to the New York Life Insurance & Trust Company, trustee, to carry out the purposes indicated in the fifth provision of the will.   Judgment accordingly.