CITY BANK FARMERS TRUST COMPANY, as Trustee under a Trust Agreement Dated July 26, 1935, Made by MARILYN MILLER O'BRIEN, Now Deceased, Plaintiff, *v.* ADO ˙THOMPSON MILLER and Others, Defendants.

Supreme Court, Special Term, New York County, June 2, 1937.

460

*Mitchell, Taylor, Capron & Marsh* [*Edward M. Cameron, Jr.*, and *Isaac J. Quesenberry* of counsel], for the plaintiff.

*Appel & Tannenbaum* [*Samuel W. Tannenbaum* and *Harry A. Tifford* of counsel], for the defendant Ado Thompson Miller.

*Glass & Lynch* [*Joseph Glass, Leslie Kirsch*, and *Sydney W. Cable* of counsel], for the defendant Chester Leo O'Brien.

*Roy P. Monahan* [*Francis L. Field* of counsel], for the defendants Claire Montgomery and Ruth Sweeney.

*Chadbourne, Hunt, Jaeckel & Brown [Gerald B. O'Neill* of counsel], for the defendant William M. Chadbourne.

*Joseph P. Brennan, Jr.,* for the defendant Edwin D. Reynolds.

*Edwin C. Mulligan,* for the defendant Carrie Carter.

*Joseph Wynne,* guardian *ad litem* for Lois Marilyn Montgomery and Robert Thompson Sweeney, infant defendants.

*Sachs & Picket,* for the defendant Thorval Anderson.

*Chadbourne, Wallace, Parke & Whiteside,* for the defendant W. Laurence Whittemore.

*Louis F. Perl [Isidore Parnes* of counsel], for the defendant Saks & Company.

*Kamen & Ostertag [Bernard I. Kamen* of counsel], for the defendant Cartier, Inc.

SHIENTAG, J. This is an action for the judicial settlement of a trustee's account and for the construction of an *inter vivos* trust. The trust must be considered in connection with the will of the decedent.

Marilyn Miller O'Brien, the testatrix and settlor of the trust, executed her will on April 23, 1931. After providing for the payment of her debts, funeral expenses and testamentary charges, decedent made the following bequests:

(a) All personal effects, jewelry, wearing apparel and all articles of personal use or ornament, in equal shares to her sisters Ruth Sweeney and Claire Montgomery, and to her niece Eloise Montgomery; (b) $25,000 to her father, Edwin Reynolds; (c) $15,000 to Carrie Carter, her mother-in-law by her first marriage; (d) a nominal sum to each of her brothers-in-law, Robert Montgomery and John Sweeney; (e) $5,000 to Woodlawn Cemetery, in trust for the preservation and upkeep of her mausoleum.

The testatrix then bequeathed the rest, residue and remainder of her estate, both real and personal, wheresoever situate and of whatsoever nature, and whether acquired before or after the execution of the will, to her executors and trustees in trust to pay from the income thereof to her mother, Ado Thompson Miller, the sum of $150 per week and such additional sums from time to time as the executors and trustees shall in their uncontrolled discretion consider necessary for her comfortable maintenance and support so long as she shall live. If necessary, the trustees were empowered to invade the corpus of the trust for the purpose

of carrying out its intent. Any surplus income over and above that which the trustees were required to pay to the mother of the decedent was to be paid in equal amounts to decedent's sisters, Ruth Sweeney and Claire Montgomery.

The remainder of the trust upon the death of decedent's mother was to be paid in equal shares to decedent's sisters, Claire Montgomery and Ruth Sweeney, or to their issue *per stirpes*, or if her sisters died leaving no issue to the person or persons who would be entitled to succeed to decedent's personal estate under the existing laws of the State of New York in the event the decedent died intestate. It was conceded at the trial that when the will was executed Marilyn Miller had an estate sufficient to carry out all of its provisions and that she was worth in excess of $500,000.

On October 1, 1934, almost three and one-half years after the execution of her will, the testatrix married Chester Leo O'Brien. No codicil to her will or any new will was made by decedent providing for her husband.

On July 26, 1935, more than four years after the execution of her will and almost a year after her marriage to O'Brien, by an agreement in writing made with the plaintiff as trustee, Marilyn Miller O'Brien created an *inter vivos* trust. For that purpose she delivered to plaintiff $78,000 principal amount of United States Treasury notes, in trust to collect the income thereof, and out of such income and principal to pay her $500 per week " so long as the net income from the trust estate and/or the principal thereof shall provide funds for the said purpose." The trust agreement further provided that upon the settlor's death " the trustee shall sell any securities remaining as part of the trust estate and shall distribute the proceeds thereof together with the remaining principal and income in the trust estate as the settlor shall by her last will and testament appoint, and in default of such appointment to the person or persons to whom, and in the shares and proportions in which, the administrator of the settlor would have been required to pay the same pursuant to the laws of the State of New York then in force had the settlor died intestate and domiciled in the State of New York at the time of her death." No power of revocation was reserved by the settlor. Investments were to be limited to securities of the government of the United States.

On April 7, 1936, less than a year after she created the *inter vivos* trust, Marilyn Miller O'Brien died. The general estate coming into the hands of her executor amounts to approximately $31,000, while the claims of creditors filed with the executor amount to approximately $34,000, and the balance in the hands of plaintiff as trustee under the *inter vivos* trust is about $64,000.

The persons entitled to take in the event of intestacy are the father, mother and husband of the decedent. The husband has elected, under section 18 of the Decedent Estate Law, to take against the will, and claims his statutory share of the estate, contending that it includes the *inter vivos* trust fund as well as the other assets which have come into the hands of the executor. The mother and sisters claim (1) that the settlor of the trust validly exercised, in their favor, the testamentary power therein reserved, and that the husband has no right to share in the trust fund; (2) that he has lost his statutory right of election because he abandoned his wife or refused or neglected to support her. The creditors claim that irrespective of whether the trust fund be treated as part of the general estate and whether or not the testamentary power reserved by the settlor has been validly exercised by her, they are entitled to resort to the principal of the trust to the extent that the assets of the general estate held by the executor are insufficient to pay their claims in full.

1. Marilyn Miller, after her marriage to Chester Leo O'Brien, set up a trust reserving to herself the income for life, with a remainder to her next of kin subject to her power of appointment by will. In the absence of a wrongful intent to deprive her husband of his distributive share under the statute (a situation which will be hereafter considered) she had the right to dispose of her property in her lifetime as she saw fit, without regard to the wishes of her spouse. If in the deed of trust she failed to make a full disposition of all her rights in the fund, subject only to an income to her for life and a testamentary power of appointment, the trust property might be said to be a part of her estate in the nature of a reversion. (*Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170; affd., 260 N. Y. 539; *Doctor* v. *Hughes*, 225 id. 305; *Stella* v. *New York Trust Co.*, 224 App. Div. 50; *Franklin* v. *Chatham, Phenix National Bank & Trust Co.*, 234 id. 369.) In that event the surviving spouse, by virtue of his election, might be entitled " to take his * * * share of the estate as in intestacy." (Dec. Est. Law, § 18.)

The decedent, however, expressed no such intention. The disposition made by the settlor when she created the trust was final except for the testamentary power of appointment. Thereafter the corpus of the trust was no part of her estate. True, she could have exercised the power in favor of her estate. This she did not do. Had she failed to exercise the power at all, the husband would have taken, not by virtue of intestacy, but in accordance with the provisions in the deed of trust; he would have taken by purchase rather than by descent or distribution. The

settlor of the trust used words effectual to create remainder interests in the persons who under the law would have been her distributees in the event of intestacy. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Guaranty Trust Co.* v. *Harris*, 267 id. 1; *Schoell-kopf* v. *Marine Trust Co.*, Id. 358.)

The line of demarcation between a reversion and a remainder is often very shadowy. Many fine and subtle distinctions have been drawn. We should look to the realities and to what was obviously the clear intention of the settlor of the trust.

In Pennsylvania it has been held, under a statute giving the surviving spouse a power of election similar to section 18 of our Decedent Estate Law, that property subject to a power in the deceased spouse to appoint by will is not part of the estate of such spouse and the surviving spouse electing to take in derogation of the will receives no part of such property. (*Matter of Kates*, 282 Penn. St. 417; 128 A. 97.) In that case the power related to a portion of an estate left by the testator's father. No distinction, however, is to be drawn because here the power was reserved in an *inter vivos* trust set up by the testatrix herself. The exercise of the power is read into, and becomes part of, the trust instrument. (Farwell, Powers, [1916] p. 328.)

The husband is not deprived, by means of the will, of his distributive share in his wife's estate. The exercise of the power is part of the trust disposition. Had the trust corpus come to the decedent from her father, giving her the income for life with the remainder to go under the same terms as those provided in the instrument in suit, the husband would have been entitled to nothing if the power were exercised by her in some one else's favor. He stands in no better position because the power was created by the decedent herself pursuant to a trust instrument made in her lifetime. The deceased spouse had full freedom of disposal over her property. She disposed of it by the trust deed. The reservation of the income for life does not make the corpus part of her estate; nor does the power of appointment make it such, any more than if the power had come to her from another.

The rule just announced would not apply if it were shown that the trust with its reserved power of appointment had been set up for the purpose of depriving the husband of his distributive share under the statute. (*Bodner* v. *Feit*, 247 App. Div. 119.) There is no basis, however, for finding such a motive. When the *inter vivos* trust was created the decedent had other substantial property, and she continued to give her husband considerable sums of money up to the time of her death. There is not the slightest evidence to

indicate that the trust was set up with the fraudulent intention of depriving the surviving spouse of his statutory share.

2. The next question is whether the testamentary power reserved in the deed of trust was in fact validly exercised by the settlor. The corpus of the *inter vivos* trust was made up solely of personal property. Section 18 of the Personal Property Law provides: "Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

The will of the decedent purports to convey all her real and personal property and "by force of the statute the power of appointment is presumed to be exercised in the same direction." (*Lockwood* v. *Mildeberger*, 159 N. Y. 181, 187.) There are no provisions in the will which in any way conflict with the terms of the trust agreement. (Cf. *Guaranty Trust Co.* v. *Halsted*, 245 N. Y. 447.) There are no provisions in the will which indicate expressly or by reasonable implication any intention on the part of the decedent not to exercise whatever power of appointment she had. On the contrary, there is every indication that she intended the power to be exercised for the benefit of her mother and sisters. Implicit in the will, in its entirety and in its several provisions, is the desire and intention to make her mother and sisters the principal beneficiaries. When she executed her will Marilyn Miller was possessed of considerable wealth. The specific legacies were trifling by comparison with her resources. Her mother and sisters were her main concern. To them she left practically her entire estate.

The Alpha and Omega in the construction of wills is to effectuate the desire and intention of the testator. That is the object of all the multifarious rules that have been built up for the interpretation of testamentary instruments. Given a clear intention courts have generally found a way to carry it into effect. No will or trust indenture has its identical twin. That is why the courts are repeatedly cautioning against resort to dogmatic rules in construing specific wills or trust agreements.

The decedent has employed no such rigid words of art as compel the holding sought by those who oppose the claims of the mother and sisters. On the contrary, the latter's contentions find support in the reasonable construction of the will and the deed of trust considered together as they should be, and in the light of the particular circumstances surrounding them. (See *Farmers' Loan &*

*Trust Co.* v. *Kip,* 192 N. Y. 266; *Matter of Beaumont,* 147 Misc. 118; *City Bank Farmers Trust Co.* v. *Green,* 160 id. 370, per Mr. Justice CHURCH.)

The fact that the will did not specifically refer to any power of appointment is of no consequence. " It is section 18 of the Personal Property Law, read into this will, which makes it obligatory upon the courts to consider the passing of all personal property as including the power of appointment." (*Low* v. *Bankers Trust Co.,* 270 N. Y. 143, 150.) Nor is it especially significant that the will containing the residuary clause here sought to be invoked was executed several years before the deed of trust reserving the power of testamentary appointment. (*Title Guarantee & Trust Co.* v. *Ebaugh,* 184 N. Y. Supp. 351; *United States Trust Co.* v. *Chauncey,* 32 Misc. 358.) Such a result is not the arbitrary operation of legislative fiat, but it is consistent with general principles of testamentary construction. A will is ambulatory and speaks as of the date of death. (*Hirsch* v. *Bucki,* 162 App. Div. 659.) When a trustee is directed to dispose of funds in such manner as the donee of a testamentary power of appointment shall provide, that is a reference to any will that shall be in force at the death of the testator. When she made the trust agreement the settlor presumably had her prior will in mind and knew that unless revoked or modified, the power of appointment exercised under the residuary clause would become effective on her death and be then read into and made part of the trust indenture. (*Syracuse Trust Co.* v. *Fuller,* 140 Misc. 918; *Title Guarantee & Trust Co.* v. *Ebaugh, supra; United States Trust Co.* v. *Chauncey, supra; Matter of Pennsylvania Company for Insurance,* 264 Penn. St. 433; 107 A. 840.) In the last cited case the Supreme Court of Pennsylvania construed a statute almost identical in terms with the provisions of section 18 of the New York Personal Property Law. It was held that a will executed on March 5, 1890, was sufficient to exercise a power of appointment created by a trust agreement executed on June 25, 1908.

3. The decedent's creditors, however, are in a different position. They contend that whether the power of appointment was validly exercised or not, they should be paid from the *inter vivos* trust fund to the extent that the general estate of the testatrix is insufficient therefor. The claims of creditors amount approximately to $34,000. The estate exclusive of the trust fund amounts to approximately $31,000. It may be that the claims will ultimately be reduced to an amount whereby payment in full may be made out of the assets of the general estate. If not, the creditors have the advantage of a statute making such a trust as is here

involved void as against them irrespective of any fraudulent intent.

Section 34 of the Personal Property Law provides: " A transfer of personal property, made in trust for the use of the person making it, is void as against the existing or subsequent creditors of such person."

The provisions of that statute have been held to enable. subsequent creditors to reach the life interest reserved to himself by the settlor of a spendthrift trust. (*Schenck* v. *Barnes*, 156 N. Y. 316.) The only interest sought to be reached in that case was the life interest; no claim was made upon the remainder over, and the court did not consider whether it was subject to the claims of creditors. In the present case the life interest has come to an end and the creditors seek to reach the corpus of the trust.

In *Young* v. *Heermans* (66 N. Y. 374) a trust deed conveyed real and personal property to the trustee to pay over the income to the settlor for life. The remainder was to be distributed in accordance with a supplementary writing to be thereafter executed, or in default of such writing to the settlor's heirs. The trust was attacked by a creditor of the settlor and held void in its entirety as against the claims of subsequent as well as existing creditors. The great weight of authority is in accord with this view. (*Nolan* v. *Nolan*, 218 Penn. St. 135; 67 A. 52; *Jamison* v. *Mississippi Valley Trust Co.*, [Mo.] 207 S. W. 788; *Menken* v. *Brinkley*, 94 Tenn. 721; 31 S. W. 92; 1 Bogert, Trusts and Trustees, [1935] § 224; Griswold, Spendthrift Trusts Created in Whole or in Part for the Benefit of the Settlor, [1930] 44 Harv. Law Rev. 203, 207; Restatement of the Law of Trusts, [1935] § 156, comment c. Contra: *Crawford* v. *Langmaid*, 171 Mass. 309; 50 N. E. 606; *Mercantile Trust Co.* v. *Bergdorf & Goodman Co.*, 167 Md. 158; 173 A. 31; and see [note] 93 A. L. R. 1211, discussing the authorities on both sides.)

There is another ground for holding that the creditors are entitled to satisfy their claims from the corpus of the trust. The settlor reserved a general power to appoint by will. By the terms of section 152 of the Real Property Law, which applies to personal property as well, a general and beneficial power in a life tenant to be exercised by will, creates a fee absolute as against creditors of the life tenant. In *Cutting* v. *Cutting* (86 N. Y. 522) a similar provision was held not to apply to an equitable life estate created by the mother's will for her son's benefit, with power in the son to appoint the remainder. The ground for this holding was that the equitable life estate was not alienable and could not be reached by creditors during the life of the donee. The court concluded that

it could not have been intended to subject the remainder after such a life estate to the claims of creditors, since the creditors could not reach the interest of the equitable life tenant during his lifetime.

Where, however, as here, the trust is set up by the settlor, reserving the income to herself for life, creditors can reach the life interest. (*Schenck* v. *Barnes, supra.*) The reason advanced for excepting the remainder in the *Cutting* case does not here exist. Accordingly, the creditors of the decedent are entitled to so much of the trust corpus as may be necessary to satisfy their claims should the general estate prove insufficient. The general estate is to be first exhausted, and only then may the executor demand enough of the trust fund to satisfy the unpaid claims of creditors. (*Syracuse Trust Co.* v. *Fuller,* 140 Misc. 918, 926.)

4. Since it is possible that the general estate of Marilyn Miller O'Brien may exceed the claims of creditors and expenses of administration, the court should, in order to avoid a retrial of the issue involved, determine one other question to which reference was made earlier in the opinion. It was contended at the trial that O'Brien abandoned his wife and that he refused or neglected to support her. Subdivision 4 of section 18 of the Decedent Estate Law provides that " No husband who has neglected or refused to provide for his wife, or has abandoned her, shall have the right of * * * and election " to take a specified share of her estate. This has been construed to exclude from the benefits of the statute a husband against whom a judgment of separation could have been obtained under the provisions of section 1161 of the Civil Practice Act. (*Matter of Sadowski,* 246 App. Div. 490; Combined Reports of Decedent Estate Comm. [1935 Reprint], 188. See, also, *Matter of Green,* 155 Misc. 641; affd., 246 App. Div. 583.)

The evidence fails to meet the test laid down. There was no abandonment. The parties lived together as husband and wife up to the time of the wife's final illness and her removal to the hospital, where she died. True, O'Brien did not support his wife; in fact, she supported him and in addition gave him large sums of money. But it may hardly be said that there was neglect or refusal to support, where the wife never expected or demanded it. I hold, therefore, that the husband has a right of election to share in the general estate of his deceased wife if there be any surplus after creditors and expenses of administration have been paid.

To summarize my conclusions:

(1) The husband has no interest whatever in the *inter vivos* trust set up by his deceased wife, the principal of which now amounts to about $64,000.

(2) The mother and sisters are the sole beneficiaries of that trust in accordance with the terms of the power of appointment validly exercised in their favor by the settlor thereof, the decedent Marilyn Miller O'Brien. They hold free from any claim of the father or any specific legatee under the will.

(3) The interest of the mother and sisters in the trust fund is subject only to the right of the creditors of the decedent to resort to the corpus of such fund for the payment of their claims, to the extent, if any, that the general estate is insufficient therefor.

(4) The trust fund shall be disposed of by the plaintiff in accordance with the terms of this decision. The balance shall be turned over directly to the testamentary trustee. There is no reason for turning the corpus over in the first instance to the executor and unnecessarily subjecting the fund to additional expenses and administration charges.

(5) An application may be made in the Surrogate's Court for the transfer to the executor of a sufficient sum to meet any deficiency in the general estate for the payment of creditors in full of their claims as finally allowed, when the exact amount needed has been ascertained.

(6) The husband has not lost his right of election under section 18 of the Decedent Estate Law. His right to share under the statute is limited to the surplus, if any, in the general estate after payment of creditors and administration expenses.

Settle judgment in accordance herewith.